UNITED STATES of America,
Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
Defendant.

No. 69 Civ. 200 (DNE).

United States District Court,
S. D. New York,
Civil Division.

Dec. 8, 1975.
As amended Feb. 27, 1976.

Hughes, Hubbard & Reed, New York City, for Felix Kaufman, movant.

United States Dept. of Justice, Antitrust Division, Raymond M. Carlson and Joseph H. Widmar, Trial Attys., Washington, D. C., for plaintiff United States.

Cravath, Swaine & Moore, New York City, for defendant International Business Machines Corp.

## MEMORANDUM

EDELSTEIN, Chief Judge:

As stated by this court on the record, Tr. at 8516, the within motion is denied. The essential arguments raised by Mr. Kaufman are substantially identical to those raised by one Frederic G. Withington in a motion to quash a subpoena directing him to appear and testify as an expert on behalf of the United States in this case. In a memorandum decision entered on December 4, 1975, the court denied Mr. Withington's motion after addressing the relevant questions and concluding, first, that this court could compel Mr. Withington to testify, as confirmed by the Second Circuit in *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1972), *cert. denied*, 412 U.S. 929, 93 S.Ct. 2753, 37 L.Ed.2d 156 (1973), and, second, that such authority should be exercised in that case. The reasons and principles set forth in the court's memorandum denying Mr. Withington's motion requires the same result with respect to the instant application.

Mr. Kaufman's assertion that the "showing" required by the Second Circuit in *Carter-Wallace* as a condition to using prior recorded expert testimony "appl[ies] *a fortiori* to the expert newly summoned against his will," *Memorandum of Law in Support of Motion to Quash and Vacate Subpoena* at 9, is so specious as not to warrant extended discussion. It is enough to quote in full the language in *Carter-Wallace* to which Mr. Kaufman refers and which he partially reproduces in his memorandum. Judge Friendly stated:

Moreover, even the unavailability of a particular expert witness should not without more allow the use of his prior testimony in a second action. It must be recognized that the general preference of the federal rules, as expressed in F.R.Civ.P. 43(a), is for oral testimony so that there will be an opportunity for live cross-examination and observation of the demeanor of the witness. While the use of previous testimony is a well-established exception to this rule, it is an excep-

tion based on the necessity of using the prior testimony when the alternative is loss of that testimony entirely. See 5 Wigmore, supra, § 1402, at 148. When the ordinary witness is unavailable, his unique knowledge of the facts will be lost unless the use of his prior testimony is allowed. But the expert witness generally has no knowledge of the *facts* of the case. Instead, he is called upon to express a professional opinion upon the facts as they are presented to him, often expressing his opinions in the form of answers to hypothetical questions. Thus, even if one particular expert is unavailable, there is no need to use his previous testimony to prevent the loss of evidence, because there will usually be other experts available to give similar testimony orally. It seems to us, therefore, that before the former testimony of an expert witness can be used, there should be some *showing* not only that the witness is unavailable, but that no other expert of similar qualifications is available or that the unavailable expert has some unique testimony to contribute.

*Id.* (emphasis supplied). In light of this language, it is clear beyond doubt that the "showing" Judge Friendly required was one prompted by the concerns inherent in the use of prior recorded testimony, concerns which are totally distinct from those involved in compelling an expert to assume the stand where he would be available for *direct and cross-examination.*

■ Mr. Kaufman's assertions with regard to the new Federal Rules of Evidence similarly fail to support his attempt to quash plaintiff's subpoena. After stating that "there is no Rule which deals directly with a *party's* right to obtain the testimony of experts," *Memorandum of Law in Support of Motion to Quash and Vacate Subpoena* at 10, Mr. Kaufman refers the court to Rule 706(a) which provides a procedure for the *appointment* by the court of experts. While it is true, as Mr. Kaufman points out, that that Rule

states that "[a]n expert . . . shall not be appointed by the court unless he consents to act," Mr. Kaufman's reliance on that statement is misplaced. First, the "appointment" envisioned by Rule 706(a) contemplates requiring the expert to perform significant duties, such as preparing "findings," in addition to or in lieu of testifying at the trial. Since the court in *Carter-Wallace* would not permit such additional duties to be imposed on an unwilling expert, 474 F.2d at 536, the requirement of consent contained in Rule 706(a) is not inconsistent with the ruling by the Second Circuit in *Carter-Wallace.* Second, as plaintiff's answering memorandum indicates (at 4), Mr. Kaufman fails to acknowledge subdivision (d) of Rule 706 which at least suggests that the requirement of consent in subdivision (a) does not extend to a party's attempt to subpoena an unwilling expert. Subdivision (d) provides:

> *Parties' experts of own selection.* Nothing in this rule [706] limits the parties in calling expert witnesses of their own selection.

■ Like Mr. Withington, Mr. Kaufman asserts that compelling him to testify for the United States would create a conflict of interest since his employer, Coopers & Lybrand, is performing certain unspecified services for IBM. In the preliminary statement to his memorandum of law, Mr. Kaufman explains that in December of 1974 Coopers & Lybrand agreed to perform services in preparation of IBM's defense in a separate private action, *California Computer Products, Inc. v. IBM,* Civil Action No. 73–2331 (N.D.Cal.) and that, thereafter, Coopers & Lybrand was engaged by Cravath, Swaine & Moore, IBM's counsel in this case, "to perform certain services in connection with the preparation of IBM's defense in the present action." *Kaufman Memorandum,* at 3. Further, it is asserted that Coopers & Lybrand "has been negotiating with IBM about a possible engagement to perform certain consulting services on behalf of an IBM subsidiary *in*

*a matter unrelated to this action."* *Id.* (emphasis supplied).

In evaluating Mr. Kaufman's claim, the court must consider not only the value of his testimony to this complex and extraordinary case, *see infra,* but also several influential factors revealed by the papers submitted on this motion. First, apart from a general familiarity due to his supervisory capacity as National Director of Management Consulting Services, Mr. Kaufman concedes that he has "no direct personal involvement" in the work performed by Coopers & Lybrand for IBM in its defense in this or the California case. *Kaufman affidavit,* at 3. Moreover, and of particular significance, IBM and its counsel, to whom Mr. Kaufman asserts the "duty of loyalty" is owed, have indicated both to Mr. Kaufman and to this court that they do not "wish to assert [in their] behalf that Mr. Kaufman is in any way precluded from testifying on behalf of the Government because of the relationship with IBM and its counsel which Coopers & Lybrand has undertaken." Letter from Thomas D. Barr (counsel for IBM) to Powell Pierpoint (counsel for Kaufman), dated September 10, 1975 (filed December 8, 1975). Indeed, as IBM points out in that letter, a copy of which is annexed hereto, in response to plaintiff's motion to add Mr. Kaufman's name to its witness list defendant filed an affidavit consenting to the entry of such an order.

In addition to these factors, Mr. Kaufman's allegations as to a conflict of interest must be weighed against two representations contained in plaintiff's answering memorandum of law. First, plaintiff asserts that Mr. Kaufman will be called to testify "concerning his observations and prior opinions expressed during the period 1960 through 1972." *Memorandum in Opposition to Motion to Quash and Vacate the Subpoena Served upon Felix Kaufman,* at 5.

This time frame, of course, terminates before Mr. Kaufman's employer undertook for IBM whatever services are referred to in the Kaufman affidavit. Additionally, plaintiff asks the court to note that:

> Coopers & Lybrand has in the past performed a · significant amount of consulting services for the Department of Justice and other Government agencies . . . . The 'duty of loyalty' expressed by Dr. Kaufman and implied by Mr. Amnowitz in their affidavits did not deter Coopers & Lybrand from being retained by IBM counsel to assist in the defense of this case in spite of its past relationships with the Government, and one month *after* Dr. Kaufman was subpoenaed to appear as a Government witness. This 'duty of loyalty' cannot and should not preclude Dr. Kaufman's testimony concerning prior opinions formed as an impartial observer of the data processing industry.

*Id.* at 5–6.

In light of these factors, the court cannot accept Mr. Kaufman's allegations with regard to an alleged conflict of interest—a "conflict" that does not even appear to concern IBM.

Having considered Mr. Kaufman's arguments in the context of this exceptional case, the court has determined in the exercise of its discretion that Mr. Kaufman should obey plaintiff's subpoena. A self-described "expert with respect to EDP," *Kaufman affidavit,* at 2, Mr. Kaufman was, prior to 1960, Cooper & Lybrand's National Director of EDP, acting primarily as a consultant in the area of EDP. Since that time he has been Regional and then National Director of Management Consulting Services. Accordingly, his testimony, like that of Mr. Withington,[1] has promise to be highly productive and of assistance to the court in the trial of this case.

---

[1] Mr. Withington, an employee of Arthur D. Little, Inc., a well-known consulting firm, described his function as "a management consultant to a wide variety of manufacturers, sellers and users of electronic computers . . . . ". Withington Affidavit at 1–2.

CRAVATH, SWAINE & MOORE
ONE CHASE MANHATTAN PLAZA
NEW YORK, N.Y.   10005
212 HANOVER   2–3000
INTERNATIONAL TELEX:   620976
TELETYPE:   710–581–0338
TELEX:   125547

September 10, 1975

*U. S. v. IBM*

Dear Mr. Pierpoint:

I have just read your papers dated September 2, 1975, seeking to quash the trial subpoena served on Felix Kaufman of Coopers & Lybrand in the above case.   I particularly write because of the references in those papers to a conflict between Coopers & Lybrand's obligations to IBM and Mr. Kaufman's possible testimony in behalf of the Government.

I have been in charge of this case since its inception and throughout much of that time have used Price Waterhouse & Co. as accountants to assist us.   In respect of two pending cases—*California Computer Products Corporation v. IBM* and *Sanders Associates, Inc. v. IBM*—Price Waterhouse has been unable to act for counsel for IBM because of prior relationships with those two plaintiffs.   In each of those cases IBM counsel, first in California and then in Concord, New Hampshire, have retained Coopers & Lybrand.   Subsequent to those retainers, my firm retained Coopers & Lybrand, particularly in connection with the possible testimony at trial here of officers of California Computer Products Corporation and Sanders Associates, Inc.   I should say that my firm has some general responsibility both for the *California Computer* and *Sanders Associates* cases and, of course, constantly consults with counsel for IBM in those cases.

I certainly understand why Coopers & Lybrand and Mr. Kaufman do object to having his services subpoenaed by the plaintiff and believe that your motion on that ground is sound.   I also understand why, as a general proposition, Coopers & Lybrand does not wish to be involved on both sides of any pending litigation or to act inconsistently with the interests of any of its clients.

However, I want you to know that neither we nor IBM wish to assert on our behalf that Mr. Kaufman is in any way precluded from testifying on behalf of the Government because of the relationship with IBM and its counsel which Coopers & Lybrand has undertaken. I should also call to your attention that on January 26, 1975, we filed an affidavit consenting to the entry of an order granting the motion of the plaintiff to add Mr. Kaufman's name to the witness list for the second time.   Of course, we did so at that time with the knowledge that Coopers & Lybrand was already working for IBM in the *Cali-*

*fornia Computer* case and believing that there was no conflict engendered because of that work. In fact I have a vague recollection that I informed plaintiff's counsel at the time that Coopers had accepted an engagement in the *California Computer* case.

I want to apologize for not having focused upon this matter before today, but I hope you will understand that since the motion was not directed against us, but rather against the plaintiff, it did not immediately reach the top of my reading pile. I recognize, of course, that our position should be brought to the Court's attention promptly and that can be done by memorandum from you or from me or by furnishing the Court a copy of this letter, as you please. Perhaps after you have had a chance to read this letter you might give me a call and we could discuss the best way to do that.

Sincerely,

(s) Tom Barr

Thomas D. Barr

Powell Pierpoint, Esq.,
    Messrs. Hughes Hubbard & Reed,
        One Wall Street,
            New York, N. Y.  10005

X

BY HAND