[952 NE2d 1033, 929 NYS2d 41]

SHEILA ELIZABETH EDWARDS, Individually and as Executrix of RICHARD EDWARDS, Deceased, and as Administratrix of the Estate of BRIAN EDWARDS, Deceased, et al., Appellants, v ERIE COACH LINES COMPANY et al., Respondents, et al., Defendants.

MEAGAN GODWIN et al., Appellants, v TRENTWAY-WAGAR, INC., et al., Respondents, et al., Defendants.

TRACI BUTLER, Appellant, v STAGECOACH GROUP, PLC, et al., Defendants, and TRENTWAY-WAGAR, INC., et al., Respondents.

COURTNEY COWAN et al., Appellants, v STAGECOACH GROUP, PLC, et al., Respondents, et al., Defendants.

LAURALEE DAVIDSON, Appellant, v COACH USA, INC., et al., Respondents.

MICHAEL ROACH, Individually and as Representative of the Estate of CATHERINE ROACH, Deceased, et al., Appellants, v COACH USA, INC., et al., Respondents.

Argued June 2, 2011; decided June 30, 2011

310

## POINTS OF COUNSEL

*Seeger Weiss LLP,* New York City (*TerriAnne Benedetto* and *Christopher A. Seeger* of counsel), for appellants in the first above-entitled action. I. This Court's review should be de novo. (*Bodea v TransNat Express,* 286 AD2d 5; *Cunningham v Williams,* 28 AD3d 1211; *LaForge v Normandin,* 158 AD2d 990; *Schwartz v Liberty Mut. Ins. Co.,* 539 F3d 135.) II. Because of prejudice to plaintiffs resulting from defendants' delay in raising the issue of the Ontario cap, the lower courts should have applied New York law without even engaging in a choice-of-law analysis—CPLR 4511 (b) does not render meaningless CPLR 3016 (e), despite the holding of the Third Department in *Burns v Young* (239 AD2d 727 [1997]). (*Cole v Mandell Food Stores,* 93 NY2d 34; *People v Lawrence,* 64 NY2d 200; *Shepardson v Town of Schodack,* 83 NY2d 894; *Bryndle v Safety-Kleen Sys., Inc.,* 66 AD3d 1396; *McCaskey, Davies & Assoc. v New York City Health & Hosps. Corp.,* 59 NY2d 755; *Neumeier v Kuehner,* 31 NY2d 121; *Bank of N.Y. v Norilsk Nickel,* 14 AD3d 140; *Galarraga v City of New York,* 54 AD3d 308; *Hilltop Nyack Corp. v TRMI Holdings,* 275 AD2d 440; *Ingraham v United States,* 808 F2d 1075.) III. *Schultz v Boy Scouts of Am.* (65 NY2d 189 [1995]) is distinguishable—rather than utilizing a *Schultz* framework with separate defendant-by-defendant analyses under *Neumeier v Kuehner* (31 NY2d 121 [1972]), a single, joint *Neumeier* analysis is appropriate under the facts of this case. (*Babcock v Jackson,* 12 NY2d 473; *Cooney v Osgood Mach.,* 81 NY2d 66; *Padula v Lilarn Props. Corp.,* 84 NY2d 519; *Feldman v Acapulco Princess Hotel,* 137 Misc 2d 878; *King v Car Rentals, Inc.,* 29 AD3d 205; *Zatuchny v "John Doe",* 34 AD3d 398; *Cunningham v Williams,* 28 AD3d 1211.) IV. The exception to the third *Neumeier* rule is not triggered by virtue of the fact that no party was advocating for the application of Pennsylvania law—the *Schultz* Court's rationale for resorting to the exception to the third *Neumeier* rule is not applicable here—instead, the Fourth Department's analyses in *Bodea v TransNat Express* (286 AD2d 5 [2001]) and *Burnett v Columbus McKinnon Corp.* (69 AD3d 58 [2009]) in declining to resort to the exception are applicable. (*Aviles v Port Auth. of N.Y. & N.J.,* 202 AD2d 45; *Hoogenboom v Gilmore,* 278 AD2d 895; *Schultz v Boy Scouts of Am.,* 65 NY2d 189; *Neumeier v Kuehner,* 31 NY2d 121.) V. New York has a significant interest in applying its law to this dispute wherein plaintiffs, who had

come to New York as tourists, were severely injured or killed in an accident between two commercial vehicles being operated on New York roadways for profit—because of New York's significant interest, the exception to the third *Neumeier* rule is not triggered. (*Neumeier v Kuehner*, 31 NY2d 121; *Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Reale v Herco, Inc.*, 183 AD2d 163; *Cooney v Osgood Mach.*, 81 NY2d 66; *Bodea v TransNat Express*, 286 AD2d 5; *Hoogenboom v Gilmore*, 278 AD2d 895.) VI. Allowing the normal, predictable ramifications of joint and several liability to take effect does not create uncertainty such that the exception to the third *Neumeier* rule is triggered, particularly where defendants specifically acknowledged that joint and several liability applied and that each set of defendants was 100% liable to plaintiffs. (*Neumeier v Kuehner*, 31 NY2d 121; *Schultz v Boy Scouts of Am.*, 65 NY2d 189.) VII. New York public policy should be implicated to require the application of New York law where defendants are business entities operating commercial vehicles for profit on New York roadways where plaintiffs were tourists in New York and where, if the foreign case law imposing a cap is applied, innocent bus passenger plaintiffs' damages will be subject to the cap, while recoveries of other plaintiffs related to the culpable driver of the tractor-trailer will not be similarly limited. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Brink's Ltd. v South African Airways*, 93 F3d 1022; *Bader by Bader v Purdom*, 841 F2d 38; *Cooney v Osgood Mach.*, 81 NY2d 66; *Loucks v Standard Oil Co. of N.Y.*, 224 NY 99; *Hamilton v Accu-Tek*, 47 F Supp 2d 330; *Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624; *Edwards v Mercy Home for Children & Adults*, 303 AD2d 543; *Phelan v Budget Rent A Car Sys.*, 267 AD2d 654; *Kilberg v Northeast Airlines*, 9 NY2d 34.)

Hiscock & Barclay, LLP, Rochester (*Anthony J. Piazza, Mark T. Whitford Jr.* and *Joseph A. Wilson* of counsel), for Erie Coach Lines Company and others, respondents in the first above-entitled action. I. Ontario's loss-allocation law should apply. (*Padula v Lilarn Props. Corp.*, 84 NY2d 519; *Tanges v Heidelberg N. Am.*, 93 NY2d 48; *Kniery v Cottrell, Inc.*, 59 AD3d 1060; *Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219; *Bodea v TransNat Express*, 286 AD2d 5; *Cunningham v Williams*, 28 AD3d 1211; *Babcock v Jackson*, 12 NY2d 473; *Cooney v Osgood Mach.*, 81 NY2d 66; *Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Burnett v Columbus McKinnon Corp.*, 69 AD3d 58.) II. The application of Ontario's loss-allocation rules does not violate New York's public policy. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Loucks v Standard*

*Oil Co. of N.Y.*, 224 NY 99; *Cooney v Osgood Mach.*, 81 NY2d 66; *Mertz v Mertz*, 271 NY 466; *Phelan v Budget Rent A Car Sys.*, 267 AD2d 654.) III. Plaintiffs' contentions concerning the timing of defendants' motions are without merit. (*Burnett v Columbus McKinnon Corp.*, 69 AD3d 58; *King v Car Rentals, Inc.*, 29 AD3d 205; *Dorsey v Yantambwe*, 276 AD2d 108; *Florio v Fisher Dev.*, 309 AD2d 694; *Bodea v TransNat Express*, 286 AD2d 5; *Mensah v Moxley*, 235 AD2d 910; *Shepardson v Town of Schodack*, 83 NY2d 894; *Burns v Young*, 239 AD2d 727; *Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105.)

*Culley, Marks, Tannenbaum & Pezzulo, LLP*, Rochester (*Glenn E. Pezzulo* of counsel), for J&J Trucking and others, respondents in the first above-entitled action. I. Plaintiffs failed to demonstrate prejudice from defendants' reliance on Ontario's loss-allocation law. (*Burns v Young*, 239 AD2d 727.) II. The Appellate Division's analysis of *Neumeier v Kuehner* (31 NY2d 121 [1972]) and *Schultz v Boy Scouts of Am.* (65 NY2d 189 [1985]) was correct. (*Cooney v Osgood Mach.*, 81 NY2d 66; *Poplar v Bourjois, Inc.*, 298 NY 62; *Babcock v Jackson*, 12 NY2d 473; *Bodea v TransNat Express*, 286 AD2d 5; *Reach v Pearson*, 860 F Supp 141; *Marillo v Benjamin Moore & Co.*, 32 AD3d 1313; *Mensah v Moxley*, 235 AD2d 910.) III. Applying New York law to the tractor-trailer defendants ignores the 90/10 liability agreement and creates uncertainty. IV. Plaintiffs failed to meet their burden with respect to the New York public policy argument. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Phelan v Budget Rent A Car Sys.*, 267 AD2d 654.)

*Clark, Gagliardi & Miller, P.C.*, White Plains (*Lawrence T. D'Aloise, Jr.*, of counsel), for appellants in the second, third and fourth above-entitled actions. Defendants have waived and are estopped from claiming that the Ontario limitation on damages applies because they did not plead the limitation as an affirmative defense. (*Burns v Young*, 239 AD2d 727; *Cole v Mandell Food Stores*, 93 NY2d 34; *Matter of Eighth Jud. Dist. Asbestos Litig.*, 8 NY3d 717; *Alas Intl. v Ramiz*, 257 AD2d 408; *Shepardson v Town of Schodack*, 83 NY2d 894.) II. If the conflict of law issues are analyzed separately with respect to the bus and tractor-trailer defendants, New York law applies to the claims against the tractor-trailer defendants. (*Neumeier v Kuehner*, 31 NY2d 121; *Bodea v TransNat Express*, 286 AD2d 5; *Sullivan v McNicholas Transfer Co.*, 224 AD2d 966; *Cooney v Osgood Mach.*, 81 NY2d 66.) III. If the claims against all defendants are considered in one conflicts analysis, New York law applies to

plaintiffs' pain and suffering claims. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Neumeier v Kuehner*, 31 NY2d 121; *Cooney v Osgood Mach.*, 81 NY2d 66; *King v Car Rentals, Inc.*, 29 AD3d 205; *Gilbert v Seton Hall Univ.*, 332 F3d 105; *Bodea v TransNat Express*, 286 AD2d 5; *Cunningham v Williams*, 28 AD3d 1211.) IV. New York's public policy is implicated in these cases. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Loucks v Standard Oil Co. of N.Y.*, 224 NY 99; *Kilberg v Northeast Airlines*, 9 NY2d 34.)

*Hiscock & Barclay, LLP*, Rochester (*Anthony J. Piazza, Mark T. Whitford Jr.* and *Joseph A. Wilson* of counsel), for Trentway-Wager, Inc. and others, respondents in the second, third and fourth above-entitled actions. I. Ontario's loss-allocation law should apply. (*Padula v Lilarn Props. Corp.*, 84 NY2d 519; *Tanges v Heidelberg N. Am.*, 93 NY2d 48; *Kniery v Cottrell, Inc.*, 59 AD3d 1060; *Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219; *Bodea v TransNat Express*, 286 AD2d 5; *Cunningham v Williams*, 28 AD3d 1211; *Mensah v Moxley*, 235 AD2d 910; *Babcock v Jackson*, 12 NY2d 473; *Cooney v Osgood Mach.*, 81 NY2d 66; *Schultz v Boy Scouts of Am.*, 65 NY2d 189.) II. The application of Ontario's loss-allocation rules does not violate New York's public policy. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Loucks v Standard Oil Co. of N.Y.*, 224 NY 99; *Cooney v Osgood Mach.*, 81 NY2d 66; *Mertz v Mertz*, 271 NY 466; *Phelan v Budget Rent A Car Sys.*, 267 AD2d 654.) III. The bus defendants did not wave their right to rely upon Ontario law. (*Bingham v New York City Tr. Auth.*, 99 NY2d 355; *Nichols v Diocese of Rochester*, 42 AD3d 903; *Burnett v Columbus McKinnon Corp.*, 69 AD3d 58; *Florio v Fisher Dev.*, 309 AD2d 694; *Bodea v TransNat Express*, 286 AD2d 5; *Mensah v Moxley*, 235 AD2d 910; *Shepardson v Town of Schodack*, 83 NY2d 894.)

*Culley, Marks, Tannenbaum & Pezzulo, LLP*, Rochester (*Glenn E. Pezzulo* of counsel), for J&J Hauling, Inc. and others, respondents in the second, third and fourth above-entitled actions. I. There was no need for defendants to affirmatively plead reliance on Ontario's loss-allocation law. (*Burns v Young*, 239 AD2d 727.) II. A choice-of-law analysis under *Neumeier v Kuehner* (31 NY2d 121 [1972]) and *Schultz v Boy Scouts of Am.* (65 NY2d 189 [1985]) correctly results in the application of the exception to the third *Neumeier* rule. (*Babcock v Jackson*, 12 NY2d 473.) III. Ontario, not New York, has the significant interest in applying its own law to the instant case. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Bodea v TransNat Express*, 286

AD2d 5; *Neumeier v Kuehner*, 31 NY2d 121; *Dorsey v Yantam-bwe*, 276 AD2d 108, 96 NY2d 712; *Mensah v Moxley*, 235 AD2d 910; *Marillo v Benjamin Moore & Co.*, 32 AD3d 1313.) IV. Plaintiffs failed to meet their burden with respect to the New York public policy argument. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189.)

*Kelly & Leonard, LLP*, Ballston Spa (*Mitchell A. Toups* and *Thomas E. Kelly* of counsel), for appellants in the fifth and sixth above-entitled actions. I. This Court should review the decisions of the trial court de novo. (*Bodea v TransNat Express*, 286 AD2d 5; *Cunningham v Williams*, 28 AD3d 1211; *LaForge v Normandin*, 158 AD2d 990; *Schwartz v Liberty Mut. Ins. Co.*, 539 F3d 135.) II. *Schultz v Boy Scouts of Am.* (65 NY2d 189 [1985]) is distinguishable—rather than utilizing a *Schultz* framework with separate defendant-by-defendant analyses under *Neumeier v Kuehner* (31 NY2d 121 [1972]), a single, joint *Neumeier* analysis is appropriate under the facts of this case. (*Babcock v Jackson*, 12 NY2d 473; *Cooney v Osgood Mach.*, 81 NY2d 66; *Padula v Lilarn Props. Corp.*, 84 NY2d 519; *Feldman v Acapulco Princess Hotel*, 137 Misc 2d 878; *King v Car Rentals, Inc.*, 29 AD3d 205; *Zatuchny v "John Doe"*, 34 AD3d 398.) III. The trial court erred in applying the exception to the third *Neumeier* rule because the situs of the accident, New York, was not merely fortuitous in this case, as it was in *Schultz v Boy Scouts of Am.* (65 NY2d 189 [1985]) and, thus, displacing the ordinarily applicable law of the situs would create greater uncertainty here. (*Neumeier v Kuehner*, 31 NY2d 121; *Phelan v Budget Rent A Car Sys.*, 267 AD2d 654; *Cooney v Osgood Mach.*, 81 NY2d 66; *Aboud v Budget Rent A Car Corp.*, 29 F Supp 2d 178; *Reale v Herco, Inc.*, 183 AD2d 163; *Huang v Lee*, 734 F Supp 71; *Bodea v TransNat Express*, 286 AD2d 5; *Aviles v Port Auth. of N.Y. & N.J.*, 202 AD2d 45.) IV. The trial court erred in applying the Ontario cap because its application is truly obnoxious to New York public policy under the facts of this case. (*Brink's Ltd. v South African Airways*, 93 F3d 1022, 519 US 1116; *Bader by Bader v Purdom*, 841 F2d 38; *Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Cooney v Osgood Mach.*, 81 NY2d 66; *Loucks v Standard Oil Co. of N.Y.*, 224 NY 99; *Hamilton v Accu-Tek*, 47 F Supp 2d 330; *Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d 1; *Losquadro v Winthrop Univ. Hosp.*, 216 AD2d 533; *Phelan v Budget Rent A Car Sys.*, 267 AD2d 654; *Aboud v Budget Rent A Car Corp.*, 29 F Supp 2d 178.) V. The trial court erred in even entertaining defendants' eleventh-hour choice-of-law motion. (*Reach v Pearson*, 860 F Supp 141;

*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Neumeier v Kuehner*, 31 NY2d 121; *Babcock v Jackson*, 12 NY2d 473; *Bodea v TransNat Express*, 286 AD2d 5; *RCLA, LLC v 50-09 Realty, LLC*, 48 AD3d 538; *Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18; *Cole v Mandell Food Stores*, 93 NY2d 34; *Blacklink Transp. Consultants Pty Ltd. v Von Summer*, 18 Misc 3d 1113[A], 2008 NY Slip Op 50017[U]; *Matter of Eighth Jud. Dist. Asbestos Litig.*, 8 NY3d 717.)

*Hiscock & Barclay, LLP*, Rochester (*Anthony J. Piazza* and *Mark T. Whitford Jr.* of counsel), for Coach USA, Inc. and others, respondents in the fifth and sixth above-entitled actions. I. Ontario's loss-allocation law should apply. (*Padula v Lilarn Props. Corp.*, 84 NY2d 519; *Tanges v Heidelberg N. Am.*, 93 NY2d 48; *Kniery v Cottrell, Inc.*, 59 AD3d 1060; *Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219; *Bodea v TransNat Express*, 286 AD2d 5; *Cunningham v Williams*, 28 AD3d 1211; *Babcock v Jackson*, 12 NY2d 473; *Cooney v Osgood Mach.*, 81 NY2d 66; *Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Burnett v Columbus McKinnon Corp.*, 69 AD3d 58.) II. The application of Ontario's loss-allocation rules does not violate New York's public policy. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Loucks v Standard Oil Co. of N.Y.*, 224 NY 99; *Cooney v Osgood Mach.*, 81 NY2d 66; *Mertz v Mertz*, 271 NY 466; *Phelan v Budget Rent A Car Sys.*, 267 AD2d 654.) III. Plaintiff's remaining contentions are without merit. (*Burnett v Columbus McKinnon Corp.*, 69 AD3d 58; *King v Car Rentals, Inc.*, 29 AD3d 205; *Dorsey v Yantambwe*, 276 AD2d 108; *Florio v Fisher Dev.*, 309 AD2d 694; *Bodea v TransNat Express*, 286 AD2d 5; *Mensah v Moxley*, 235 AD2d 910; *Shepardson v Town of Schodack*, 83 NY2d 894; *Burns v Young*, 239 AD2d 727; *Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105; *Cunningham v Williams*, 28 AD3d 1211.)

*Culley, Marks, Tanenbaum & Pezzulo, LLP*, Rochester (*Glenn E. Pezzulo* of counsel), for J&J Hauling, Inc. and others, respondents in the fifth and sixth above-entitled actions. I. The Appellate Division's analysis of *Neumeier v Kuehner* (31 NY2d 121 [1972]) and *Schultz v Boy Scouts of Am.* (65 NY2d 189 [1985]) was correct. (*Cooney v Osgood Mach.*, 81 NY2d 66; *Poplar v Bourjois, Inc.*, 298 NY 62; *Babcock v Jackson*, 12 NY2d 473; *Bodea v TransNat Express*, 286 AD2d 5; *Reach v Pearson*, 860 F Supp 141; *Marillo v Benjamin Moore & Co.*, 32 AD3d 1313; *Mensah v Moxley*, 235 AD2d 910.) II. Applying New York law to the tractor-trailer defendants ignores the 90/10 liability

agreement and creates uncertainty. (*Neumeier v Kuehner*, 31 NY2d 121.) III. Plaintiffs failed to meet their burden with respect to the New York public policy argument. (*Schultz v Boy Scouts of Am.*, 65 NY2d 189; *Phelan v Budget Rent A Car Sys.*, 267 AD2d 654.) IV. Plaintiffs failed to demonstrate prejudice from defendants' reliance on Ontario's loss-allocation law. (*Burns v Young*, 239 AD2d 727.)

**OPINION OF THE COURT**

READ, J.

Near Geneseo, New York on January 19, 2005 a charter bus carrying members of an Ontario women's hockey team plowed into the rear end of a tractor-trailer parked on the shoulder of the highway. Three bus passengers and the tractor-trailer's driver died; several bus passengers were seriously hurt. We are called upon to decide the choice-of-law issue presented by these six lawsuits, which were brought to recover damages for wrongful death and/or personal injuries.

I.

Nearly a half-century ago, in *Babcock v Jackson* (12 NY2d 473 [1963]), we abandoned what had long been our choice-of-law rule whereby the law of the place of the tort invariably governed. Because "in nearly all such cases, the conduct causing injury and the injury itself occurred in the same jurisdiction" (*id.* at 477 n 2), this rule offered "the advantages of certainty, ease of application and predictability," but at the expense of "the interest which [other] jurisdictions . . . [might] have in the resolution of particular issues" (*id.* at 478; *see also Cooney v Osgood Mach.*, 81 NY2d 66, 72 [1993] [place-of-the-tort theory "failed to accord any significance to the policies underlying the conflicting laws of other jurisdictions"]).

To "accomodat[e] the competing interests in tort cases with multi-State contacts," we adopted the "center of gravity" or "grouping of contacts" approach, which gave the "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, ha[d] the greatest concern with the specific issue raised in the litigation" (12 NY2d at 481). This new method of analysis, however, was

limited to competing loss-allocation—not conduct-regulating—rules.[1] As we explained in *Babcock*,

> "[w]here the defendant's exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place" (12 NY2d at 483).

The facts of *Babcock* illustrate how "grouping of contacts" worked. In that case, a New York passenger in a car operated by a New York driver was injured in an automobile accident that occurred in Ontario during a weekend trip to Canada. We noted that the trip began and was to end in New York, where the car was garaged, licensed and insured, and where the driver-passenger relationship arose (*id.* at 482-483). The "guest" passenger sued the "host" driver in New York for negligence. At the time, the Ontario guest statute barred the passenger from recovering damages from the driver,[2] while New York law did not.

Looking to the "grouping of contacts," we decided that New York—not Ontario, the place of the tort—possessed "the dominant contacts and the superior claim for application of its law" as to whether the passenger should "recover[ ] for damages for a wrong concededly committed" (*id.* at 483). We commented that, in this context,

> "[a]lthough the rightness or wrongness of [the driver's] conduct may depend upon the law of the particular jurisdiction through which the automobile passes, the rights and liabilities of the parties which

---

**1.** Loss-allocation rules "prohibit, assign, or limit liability *after the tort occurs,*" whereas conduct-regulating rules "have the prophylactic effect of governing conduct to prevent injuries from occurring" in the first place (*Padula v Lilarn Props. Corp.*, 84 NY2d 519, 522 [1994] [emphasis added]).

**2.** This statute provided that "the owner or driver of a motor vehicle, other than a vehicle operated in the business of carrying passengers for compensation, is not liable for any loss or damage resulting from bodily injury to, or the death of any person being carried in . . . the motor vehicle" (*see* Highway Traffic Act of Province of Ontario [Ontario Rev Stat (1960) ch 172], § 105 [2], quoted in *Babcock*, 12 NY2d at 477).

stem from their guest-host relationship should remain constant and not vary and shift as the automobile proceeds from place to place. Indeed, such a result . . . accords with the interests of the host in procuring liability insurance adequate under the applicable law, and the interests of his insurer in reasonable calculability of the premium" (*id.* at 483-484 [internal quotation marks omitted]).

Over time, the "grouping of contacts" approach put into place by *Babcock* evolved into a more explicit "interest analysis." This method of deciding choice-of-law issues "reject[ed] a quantitative grouping of contacts" because "[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws" (*Miller v Miller*, 22 NY2d 12, 17 [1968]; *see also Cooney*, 81 NY2d at 72 ["Of the various, sometimes competing, schools of thought on choice of law, the one that emerged as most satisfactory was 'interest analysis,' which sought to effect the law of the jurisdiction having the greatest interest in resolving the particular issue"]).

We refined our "interest analysis" so as "to assure a greater degree of predictability and uniformity" in *Neumeier v Kuehner* (31 NY2d 121, 127 [1972]), a case where a domiciliary of Ontario was killed when the automobile in which he was a passenger collided with a train in Ontario. The vehicle was owned and driven by a resident of New York, who was also killed in the accident. The passenger's wife and administratrix, a citizen of Canada and a domiciliary of Ontario, brought an action for wrongful death in New York against the driver's estate and the railway company, both of which interposed affirmative defenses involving the Ontario guest statute.[3] The wife, asserting that the Ontario statute was unavailable, moved to dismiss the affirmative defenses, and Supreme Court denied the motion (63

---

**3.** When we handed down *Neumeier*, the Ontario guest statute provided that the owner or driver of a motor vehicle was not liable for damages for the injury or death of a guest-passenger in the absence of gross negligence (*see* Highway Traffic Act of Province of Ontario [Ont Rev Stat (1960) ch 172], § 105 [2], as amended by Ont Stat 1966, ch 64, § 20 [2], discussed in *Neumeier*, 31 NY2d at 124). We noted in *Neumeier* that although in *Babcock* we considered that the statute's sole purpose was to protect Ontario defendants and their insurers from collusive lawsuits, "[f]urther research . . . revealed the distinct possibility that one purpose, and perhaps the only purpose [of the statute], was to protect owners and drivers against suits by ungrateful guests" (31 NY2d at 124 [citations and internal quotation marks omitted]).

Misc 2d 766 [1970]). The Appellate Division reversed (37 AD2d 70 [1971]), and asked us if its order was properly made. We answered, "No."

*Neumeier* set up a three-rule framework for resolving choice of law in conflicts settings involving guest statutes, which by definition allocate losses after the tort occurs rather than regulate primary conduct. Under the first *Neumeier* rule, when the driver and passenger are domiciled in the same state, and the vehicle is registered there, the law of their shared jurisdiction controls (31 NY2d at 128). The second rule addresses the situation where the driver and the passenger are domiciled in different states, and the law of the place where the accident occurred favors its domiciliary. When the driver's conduct occurs in the state where he is domiciled, which would not impose liability, that state's law applies. Conversely, if the law of the place where the accident occurred permits the injured passenger to recover, then the driver, "in the absence of special circumstances," may not interpose a conflicting law of his state as a defense (*id.*; *see also Cooney*, 81 NY2d at 73 ["In essence, . . . the second *Neumeier* rule adopts a 'place of injury' test for true conflict guest statute cases"]).

"In other situations, when the passenger and the driver are domiciled in different states, the rule is necessarily less categorical" (31 NY2d at 128). Thus, under the third *Neumeier* rule, the law of the state where the accident occurred governs unless "it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants" (*id.*).

Since the passenger in *Neumeier* was domiciled in Ontario, where the guest statute did not allow recovery, and the driver in New York, the third rule—the law of the place of the tort (i.e., Ontario)—would normally control. We saw no reason to apply the third rule's proviso since the wife "failed to show that [New York's] connection with the controversy was sufficient to justify displacing" lex loci delicti, the law of the place of the wrong (*id.* at 129). The wife did not show that ignoring Ontario's guest statute in a case "involv[ing] an Ontario-domiciled guest at the expense of a New Yorker . . . further[ed] the substantive law purposes of New York"; and "failure to apply Ontario's law would impair . . . the smooth working of the multi-state system [and] produce great uncertainty for litigants by sanctioning forum shopping and thereby allowing a party to select a forum

[countenancing] a larger recovery than [that party's] own domicile" (*id.* [internal quotation marks omitted]).

We have routinely applied the *Neumeier* framework to conflicts in loss-allocation situations not involving guest statutes. For example, the issue in *Schultz v Boy Scouts of Am.* (65 NY2d 189 [1985]) was whether the doctrine of charitable immunity would apply in a lawsuit brought by plaintiffs domiciled in New Jersey. The plaintiffs were the parents of two boys, one of whom committed suicide. They sued the Boy Scouts of America and the Brothers of the Poor of St. Francis, Inc. for negligent hiring and supervision of a sexually abusive brother (also a defendant), who was supplied by the Franciscan Brothers, pursuant to an agreement with the Roman Catholic Archdiocese of Newark, as a teacher at a school owned and operated by the Archdiocese, and who was a scoutmaster of a Boy Scout troop sponsored by the school and chartered by the Boy Scouts. The plaintiffs' sons attended the class taught by the brother at the school, and were members of his scout troop.

Acts of sexual abuse were alleged to have taken place mostly during Boy Scout camping outings in New York, but also at the school in New Jersey.[4] The Boy Scouts were domiciled in New Jersey; the Franciscan Brothers in Ohio. At the time the plaintiffs' causes of action arose, New Jersey and Ohio both recognized charitable immunity while New York did not. The Ohio rule, however, denied immunity in actions based on negligent hiring and supervision.[5] And the plaintiffs' claims had already been determined to have been barred by the New Jersey doctrine of charitable immunity in an earlier action brought by the plaintiffs in New Jersey against the Archdiocese. We held that New Jersey law governed, and that the plaintiffs were precluded from relitigating its effect in light of the final determination in their action against the Archdiocese.

Under the first *Neumeier* rule, New Jersey law clearly controlled the plaintiffs' claim against the Boy Scouts because the plaintiffs and this defendant had "chosen to identify themselves in the most concrete form possible, domicile, with a jurisdiction that [had] weighed the interests of charitable tort-feasors and their victims and decided to retain the defense of charitable

---

4. We observed that "both parties and the dissent implicitly assume[d]" that "the locus of the tort . . . [was] New York because most of [the brother's] acts were committed [there]" (*Schultz,* 65 NY2d at 195).

5. We speculated that it was for this reason that the Franciscan Brothers never claimed that Ohio law governed (*Schultz,* 65 NY2d at 195).

immunity" (*id.* at 199-200). But because this was "the first case for our review [where] New York [was] the forum-locus rather than the parties' common domicile," we examined "the reasons most often advanced for applying the law of the forum-locus and those supporting application of the law of the common domicile" (*id.* at 200).

We identified those reasons "most often urged" to favor the forum-locus as "(1) to protect medical creditors who provided services to injured parties in the locus State, (2) to prevent injured tort victims from becoming public wards in the locus State and (3) the deterrent effect application of locus law [would have] on future tort-feasors in the locus State" (*id.* at 200). We opined that the first two reasons shared "common weaknesses," since neither "necessarily require[d] application of the locus jurisdiction's law, but rather invariably mandate[d] application of the law of the jurisdiction that would either allow recovery or allow . . . greater recovery" (*id.*). As a result, they were "subject to criticism . . . as being biased in favor of recovery" (*id.*). Further, we observed, neither consideration was relevant in *Schultz* since there was no evidence of unpaid medical creditors or that the plaintiffs were about to become wards of the state. As for the third reason, we acknowledged that although it was "conceivable that application of New York's law in this case would have some deterrent effect on future tortious conduct" in New York, our "deterrent interest [was] considerably less because none of the parties [was] a resident and the rule in conflict [was] loss-allocating rather than conduct-regulating" (*id.*).

On the other side of the ledger, we toted up "persuasive reasons for consistently applying the law of the parties' common domicile." These included (1) reduced opportunities for forum shopping; (2) rebuttal of "charges that the forum-locus is biased in favor of its own laws and in favor of rules permitting recovery"; (3) "the concepts of mutuality and reciprocity support consistent application of the common-domicile rule" since "[i]n any given case, one person could be either plaintiff or defendant and one State could be either the parties' common domicile or the locus, and yet the applicable law would not change depending on their status"; and (4) such a rule was "easy to apply and [brought] a modicum of predictability and certainty to an area of the law needing both" (*id.* at 201).

We then turned our attention to the plaintiffs' claim against the Franciscan Brothers. We evaluated choice of law with

respect to this defendant under the third *Neumeier* rule "because the parties [were] domiciled in different jurisdictions with conflicting loss-distribution rules and the locus of the tort [was] New York, a separate jurisdiction"; and the law of the place of the tort would "normally apply" (*id.*). We decided, however, that this situation fit the proviso to the third rule "[f]or the same reasons stated in our analysis of the action against" the Boy Scouts; namely, this result "would further [New Jersey's] interest in enforcing the decision of its domiciliaries to accept the burdens as well as the benefits of that State's loss-distribution tort rules and its interest in promoting the continuation and expansion of [the Franciscan Brothers'] charitable activities in that State" (*id.*). In addition,

> "although application of New Jersey's law may not affirmatively advance the substantive law purposes of New York, it will not frustrate those interests because New York has no significant interest in applying its own law to this dispute. Finally, application of New Jersey law will enhance the smooth working of the multi-state system by actually reducing the incentive for forum shopping and it will provide certainty for the litigants whose only reasonable expectation surely would have been that the law of the jurisdiction where plaintiffs are domiciled and defendant sends its teachers would apply, not the law of New York where the parties had only isolated and infrequent contacts as a result of [the brother's] position as Boy Scout leader" (*id.* at 201-202).

Finally, we rejected the plaintiffs' argument that New York public policy foreclosed application of the New Jersey charitable immunity statute. We emphasized the difficulty of upsetting the choice of law in a conflicts situation on this basis; specifically, the proponent of a public policy bar would have to "establish that to enforce the foreign law 'would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal' expressed in them" (*id.* at 202). Further, "the proponent must establish that there [were] enough important contacts between the parties, the occurrence and the New York forum to implicate our public policy and thus preclude enforcement of the foreign law" (*id.*). We concluded that we did not need to decide whether enforcement of New Jersey's charitable immunity statute offended

New York public policy "because there [were] not sufficient contacts between New York, the parties and the transactions involved to implicate our public policy and call for its enforcement" (*id.* at 203).

## II.

The charter bus's driver (Ryan A. Comfort), his employer (Erie Coach Lines Company), and the company that leased the bus (Trentway-Wagar, Inc.) are Ontario domiciliaries, as are (or were) all the injured and deceased passengers. The tractor-trailer driver (Ernest Zeiset) was a Pennsylvania domiciliary, as are his employer (Joseph French, doing business as J&J Trucking) and the companies that hired the trailer (Verdelli Farms, Inc. and V.F. Transportation, Inc.). The injured passengers and the representatives of those who died (collectively, plaintiffs) filed multiple wrongful death and personal injury lawsuits in Supreme Court.

These split-domicile lawsuits presented an obvious choice-of-law issue because Ontario caps noneconomic damages where negligence causes catastrophic personal injury,[6] while New York does not cap such damages in a no-fault case involving serious injury. Following extensive discovery, Erie Coach, Trentway[7] and Comfort (collectively, the bus defendants) and J&J Trucking, the administratrix of Zeiset's estate, Verdelli Farms and V.F. Transportation (collectively, the trailer defendants) moved for orders from Supreme Court determining that, under New York's choice-of-law principles, Ontario law applied to "all loss allocation issues" in these cases.

On March 23, 2009, Supreme Court granted both motions, noting that the Supreme Court of Canada had capped noneconomic damages at CDN $100,000 in 1978 dollars, which was

---

**6.** The clearest statement of Canada's rule appears in *Andrews v Grand & Toy Alberta, Ltd.* ([1978] 2 SCR 229 ¶ 98; *see also Thornton v Prince George School Dist. No. 57*, [1978] 2 SCR 267 ¶ 38; *Arnold v Teno*, [1978] 2 SCR 287 ¶¶ 108-109). The cap apparently applies only to "catastrophic personal injury cases" arising from negligence and medical malpractice (*see Young v Bella*, [2006] 1 SCR 108 ¶¶ 62-66 [Supreme Court of Canada rejected a nonpecuniary cap for defamation damages (¶ 65); stated that cases other than catastrophic personal injury cases do not raise the same policy considerations (*id.*); and left open the question whether policy considerations might warrant a cap in other circumstances (¶ 66)]).

**7.** Parent companies originally listed as defendants (Coach Canada, Inc., Stagecoach Group, PLC and Coach USA, Inc.) successfully moved for dismissal.

then equivalent to US $310,000. In reaching its decisions, the court concluded that "[p]roper analysis" began with *Neumeier*. Citing the third *Neumeier* rule, the judge stated, without elaboration, that "[a]pplying Ontario loss allocation laws [would] not impair the smooth working of the multi-state system, and [would] advance the relevant substantive law purposes of the jurisdiction having the most significant connections to the allocation of loss"; and that Ontario "clearly [had] the predominant interest[ ] in applying its loss allocation laws to its citizens, whereas New York [had] no such interest." Further, Supreme Court discussed *Schultz*, which it regarded as analogous; it saw no reason to consider Pennsylvania law since none of the parties requested this.

The trial of these cases was bifurcated, and, during the course of the jury trial on liability, the parties reached a settlement of that issue. In the stipulation of settlement, placed on the record on June 17, 2009, the bus defendants agreed to 90% and the trailer defendants to 10% liability. Meanwhile, plaintiffs had appealed Supreme Court's orders determining that Ontario law would govern any award of noneconomic damages to be made at a damages trial. The Appellate Division affirmed (72 AD3d 1581, 1586, 1587, 1588, 1589 [4th Dept 2010]; 74 AD3d 1813, 1814 [4th Dept 2010]).

"As a preliminary matter," the Appellate Division decided that Supreme Court "did not abuse its discretion by taking judicial notice of Ontario law . . . despite the failure of defendants to raise [its] applicability . . . as an affirmative defense and to provide the substance of the law in their pleadings in accordance with CPLR 3016 (e)" (72 AD3d at 1583). The court subscribed to the Third Department's view, expressed in *Burns v Young* (239 AD2d 727, 728 [3d Dept 1997]), that "because CPLR 4511 (b) permits . . . judicial notice of the laws of foreign countries that are presented 'prior to the presentation of any evidence at the trial,' " a court has discretion to apply the law of a foreign country notwithstanding "a party's failure to comply with the requirement in [CPLR] 3016 (e) that the substance of such laws shall be set forth in the pleading" (72 AD3d at 1583). Further, the court rejected plaintiffs' argument that the Ontario cap was procedural rather than substantive, citing *Davenport v Webb* (11 NY2d 392, 393 [1962]) for the "well established" proposition that "the measure of damages is substantive" (72 AD3d at 1583).

The Appellate Division agreed with Supreme Court's bottom-line conclusion that the Ontario cap applied to damages

recovered from the bus and trailer defendants, but conducted separate choice-of-law analyses. With respect to the bus defendants, the court looked to the first *Neumeier* rule, which directs that the law of the parties' common domicile—here, Ontario—governs. The court observed that applying the law of a shared domicile reduced the risk of forum shopping; rebutted the charge of local bias; and served " 'the concepts of mutuality and reciprocity,' " which are " 'support[ed by the] consistent application of the common-domicile law' " (*id.* at 1584, quoting *Schultz*, 65 NY2d at 201).

As between plaintiffs and the trailer defendants, the Appellate Division applied the third *Neumeier* rule, which prefers the law of the place of the tort. Invoking the proviso to the third rule, the court decided, however, that Ontario law should govern, reasoning that "while applying Ontario law '[might] not affirmatively advance the substantive law purposes of New York, it [would] not frustrate those interests because New York has no significant interest in applying its own law to this dispute' " (72 AD3d at 1585, quoting *Schultz*, 65 NY2d at 201). The court also commented that New York law created great uncertainty for the litigants because the trailer defendants were only 10% liable for the accident pursuant to the parties' settlement. If the trailer defendants' exposure to noneconomic damages was unlimited while the bus defendants' liability for this item of damages was capped, the trailer defendants might end up paying far more than their stipulated share.

Finally, the Appellate Division concluded that plaintiffs failed to meet the " 'heavy burden' of establishing that the application of Ontario law violate[d] the public policy of New York" (72 AD3d at 1585, quoting *Schultz*, 65 NY2d at 202). The court pointed out that " 'resort to the public policy exception should be reserved for those foreign laws that are truly obnoxious' " (*id.*, quoting *Cooney*, 81 NY2d at 79), which was not the case here. In any event, the Appellate Division decided that the parties' contacts were too few and limited in scope to implicate New York's public policy (72 AD3d at 1585, citing *Schultz*, 65 NY2d at 201-202).

The Appellate Division granted plaintiffs permission to appeal, and asked us whether its orders were properly made (2010 NY Slip Op 76969[U] [4th Dept 2010]). For the reasons that follow, we answer "No" with respect to the trailer defendants.

## III.

On this appeal, plaintiffs again contend that the lower courts were foreclosed from engaging in choice-of-law analysis because defendants did not raise the Ontario cap in their answers. In our view, defendants' motions were properly entertained. As the Appellate Division mentioned, CPLR 4511 (b) vests Supreme Court with discretion to take judicial notice of foreign law prior to the presentation of evidence at trial. This provision states that the court *shall* take judicial notice of specified matters (which include the laws of foreign countries or their political subdivisions) if a party so requests; furnishes the court sufficient data to enable it to take judicial notice; and advises adverse parties of its intent to ask the court to take judicial notice. This third requirement—notice to adverse parties—must be "given in the pleadings *or* prior to the presentation of any evidence at the trial, but a court may require or permit other notice" (CPLR 4511 [b] [emphasis added]). Defendants complied with these three conditions when they made their pretrial motions.

Plaintiffs rely on CPLR 3016 (e), however, which provides that "[w]here a cause of action or defense is based upon the law of a foreign country or its political subdivision, the substance of the foreign law relied upon *shall be stated*" (emphasis added). But CPLR 3016 (e) must be read together with CPLR 4511 (b). As a result, while "[o]bedience to [CPLR 3016 (e)'s] pleading requirement . . . would seem ipso facto to satisfy the trio of requirements necessary to *compel* judicial notice" under CPLR 4511 (b), "omission to plead the foreign law . . . need prove no more fatal, or serious, than any other omission under CPLR 3015 or 3016," and "the fact that the court can on its own volunteer to give the foreign law judicial notice under CPLR 4511 (b) should further divest CPLR 3016 (e) of any undue rigidity" (*see* Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3016:8 [emphasis added]). Further, we do not detect the complained-of unfairness or prejudice. A split-domicile lawsuit, such as this one, always presents a choice-of-law dilemma where loss-allocation rules conflict. This issue may have lain dormant during discovery, but there was no reason for plaintiffs to assume that it had vanished.[8]

---

8. With respect to another preliminary matter raised by the Roach plaintiffs—whether the Ontario cap is "procedural" or "substantive"—we

■ Next, plaintiffs press for what they call a "single, joint *Neumeier* analysis" in cases, such as this one, with multiple tortfeasors. As a result, the Edwards plaintiffs argue, the trial judge "properly analyzed both sets of Defendants—those related to the bus and those related to the tractor trailer—together," although he reached the wrong conclusion. In our view, however, the correct way to conduct a choice-of-law analysis is to consider each plaintiff vis-à-vis each defendant, which is essentially the approach taken by the Appellate Division. More to the point, this is the path we ourselves have already traveled: in *Schultz*, the plaintiffs likewise demanded judgment, jointly and severally, against multiple defendants, and we applied the *Neumeier* rules separately in relation to the New Jersey-domiciled Boy Scouts and the Ohio-domiciled Franciscan Brothers.[9] The rules in the *Neumeier* framework, in fact, by their very nature call for a plaintiff-by-defendant inquiry.[10]

■ Here, the Ontario cap controls any award of noneconomic damages against the bus defendants because they share an Ontario domicile with plaintiffs. We described the relevant choice-of-law principle and its rationale in *Cooney*:

"Under the first *Neumeier* rule, when [the plaintiff and the defendant] share a common domicile, that law should control. Indeed, when both parties are from the same jurisdiction, there is often little reason to apply another jurisdiction's loss allocation

---

conclude that, however the cap may be characterized, it is a loss-allocation rule subject to "interest analysis" under New York's choice-of-law principles.

**9.** The dissent seeks to distinguish *Schultz* from this case on the ground that the torts alleged in the former "were distinct acts occurring at different times" while here "the causes of action arise from a single incident" (dissenting op at 333). But regardless of the factual dissimilarities between the two cases, the defendants in *Schultz* were—just like defendants in this case—subject to joint and several liability for their separate allegedly tortious acts.

**10.** The dissent opines that "[a]pplying a single *Neumeier* analysis to jointly and severally liable defendants and having them subject to the same laws would further the goals of predictability and uniformity" (dissenting op at 333). Making multiple defendants ultimately subject to the same loss-allocation rules might make management of a case simpler for the courts and the parties. A "single . . . analysis," however, would not guarantee "predictability and uniformity." For one thing, under this approach the choice of law for loss allocation in a multi-state, multi-tortfeasor case would depend on which potential defendants a plaintiff chose to sue. The fact is, when we departed from lex loci delicti in *Babcock*, we knowingly sacrificed a degree of certainty so as to honor our sister states' interests in enforcing their own loss-allocation rules with respect to their own domiciliaries (*see Babcock*, 12 NY2d at 478; *Cooney*, 81 NY2d at 72).

rules. The domiciliary jurisdiction, which has weighed the competing considerations underlying the loss allocation rule at issue, has the greater 'interest in enforcing the decisions of both parties to accept both the benefits and the burdens of identifying with that jurisdiction and to submit themselves to its authority' . . . Moreover, this rule reduces opportunities for forum shopping because the same law will apply whether the suit is brought in the locus jurisdiction or in the common domicile, the two most likely forums" (81 NY2d at 73, quoting *Schultz*, 65 NY2d at 198).

We had earlier made the same point at least as forcefully in *Schultz*, where we stressed that "the locus jurisdiction has *at best a minimal interest* in determining the right of recovery or the extent of the remedy in an action by a foreign domiciliary for injuries resulting from the conduct of a codomiciliary that was tortious under the laws of both jurisdictions" (65 NY2d at 198 [emphasis added]). We cited substantial precedent—*Tooker v Lopez* (24 NY2d 569, 576 [1969]), *Miller* (22 NY2d at 18-19) and *Babcock* (12 NY2d at 482)—to support this proposition.

In sum, Ontario has weighed the interests of tortfeasors and their victims in cases of catastrophic personal injury, and has elected to safeguard its domiciliaries from large awards for nonpecuniary damages. In lawsuits brought in New York by Ontario-domiciled plaintiffs against Ontario-domiciled defendants, New York courts should respect Ontario's decision, which differs from but certainly does not offend New York's public policy (*see Schultz*, 65 NY2d at 202 [emphasizing the "heavy burden" borne by a party seeking to show that a foreign law contravenes New York public policy]).

■ Finally, we look to the third *Neumeier* rule to decide whether the Ontario cap controls with respect to the trailer defendants. Critically, the third rule establishes the place of the tort—here, New York—as the "normally applicable" choice in a conflicts situation such as this one, where the domicile of plaintiffs, the domicile of the trailer defendants and the place of the tort are different. Initially, the fact that the trailer defendants declined to advocate for Pennsylvania law does not permit them to take advantage of the Ontario cap. To rule otherwise would only encourage a kind of forum shopping. Moreover, the stipulation of settlement on liability is not relevant to "interest analysis," which seeks to recognize and respect the policy

interests of a jurisdiction in the resolution of the particular issue where a conflict of law exists.

The trailer defendants contend that *Schultz* controls, meaning that their situation is comparable to that of the Franciscan Brothers, and so the law of New York should not govern, even though the accident occurred there. We do not agree. While New York employs "interest analysis" rather than "grouping of contacts," the number and intensity of contacts is relevant when considering whether to deviate from lex loci delicti under the third *Neumeier* rule—i.e., whether even to analyze if displacing this "normally applicable" choice would "advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants" (*Neumeier*, 31 NY2d at 128).

In *Schultz*, New Jersey was the state where the Franciscan Brothers supplied teachers for a New Jersey school, where some of the acts of sexual abuse allegedly took place, where one of the boys committed suicide, where the two boys allegedly suffered from and were treated for psychological injuries, where the Franciscan Brothers were said to have hired and failed to fire the brother. Under these circumstances, there was every reason to evaluate, under the proviso to the third *Neumeier* rule, whether New Jersey law should displace New York law with respect to the negligent hiring and supervision claim asserted against the Franciscan Brothers in the plaintiffs' lawsuit. Here, by contrast, there was no cause to contemplate a jurisdiction other than New York, the place where the conduct causing injuries and the injuries themselves occurred. The trailer defendants did not ask Supreme Court to consider the law of their domicile, Pennsylvania, and they had no contacts whatsoever with Ontario other than the happenstance that plaintiffs and the bus defendants were domiciled there.

Accordingly, the orders in these cases should be modified, without costs, in accordance with this opinion and as so modified, affirmed, and the certified questions answered in the negative.

CIPARICK, J. (dissenting in part). Because I believe that a single analysis pursuant to *Neumeier v Kuehner* (31 NY2d 121 [1972]) should be applied where nondomiciliary defendants are jointly and severally liable to nondomiciliary plaintiffs in a tort action arising out of a single incident within the State of New York, and that under such an analysis New York law should

apply to all defendants for purposes of uniformity and predictability, I respectfully dissent.

*Neumeier* sets forth a three-rule framework for determining what law should govern when there is a conflict between the laws of the domiciles of the parties or the state in which the tort occurred.[1] The first *Neumeier* rule provides that when the plaintiff and the defendant are domiciled in the same state, the law of that state shall govern (*see* 31 NY2d at 128).

The second rule "addresses true conflicts, where the parties are domiciled in different States and the local law favors the respective domiciliary" (*Cooney*, 81 NY2d at 73 [internal quotation marks omitted]). This rule is not applicable to this case.

The third rule provides that when plaintiff and defendant are differently domiciled, the law of the location of the tort shall usually apply unless "it can be shown that displacing the normally applicable rule will advance the substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants" (*Neumeier*, 31 NY2d at 128).

In this matter, all plaintiffs and the bus defendants are domiciliaries of Ontario whereas the tractor-trailer defendants are domiciled in Pennsylvania. The majority opines that each defendant should be analyzed separately under the *Neumeier* rules relying on *Schultz v Boy Scouts of Am.* (65 NY2d 189 [1985]) (*see* majority op at 329). In applying a separate *Neumeier* analysis to each defendant, the majority determines that Ontario law should apply to the bus defendants, while New York law should apply to the tractor-trailer defendants. I disagree.

While the facts in *Schultz* lent themselves to a separate analysis for each defendant, the facts in this case do not justify such an analysis. The plaintiffs in *Schultz* alleged that the two defendants, the Boy Scouts of America and the Brothers of the Poor of St. Francis, had each negligently hired and supervised the same sexually abusive employee. The alleged sexual abuse occurred while the plaintiffs' sons were at a Boy Scout camp in New York and continued at a school in New Jersey. The tortious activities in *Schultz* took place over varied periods of time and in different locations. Moreover, there was no relationship between the defendants' actions other than the fact that they

---

**1.** While the *Neumeier* rules specifically referred to guest statutes, the rules have been expanded to cover other loss-allocation conflicts (*see Cooney v Osgood Mach.*, 81 NY2d 66, 73 [1993]).

employed the same alleged bad actor. Because the torts were distinct acts occurring at different times, it was appropriate for us to perform a separate choice-of-law analysis.

In contrast, in the instant case, the causes of action arise from a single incident in New York—the collision of the bus into the parked tractor-trailer—and the liability of the defendants is interrelated (*see King v Car Rentals, Inc.*, 29 AD3d 205, 213 [2d Dept 2006] ["(b)ecause the liability of all of the defendants here is thus interrelated, the application of the laws of different jurisdictions to the several defendants may lead to unanticipated complications as potentially inconsistent law is applied"]).

Furthermore, a separate *Neumeier* analysis for differently domiciled defendants creates additional unpredictability and lack of uniformity in litigation that arises from a single incident. The purpose of the *Neumeier* rules is to "assure a greater degree of predictability and uniformity, on the basis of our present knowledge and experience" (31 NY2d at 127). Applying a single *Neumeier* analysis to jointly and severally liable defendants and having them subject to the same laws would further the goals of predictability and uniformity. In fact, this case illustrates the potential for grossly inequitable results when different laws are applied to defendants who are jointly and severally liable. Here, during a jury trial on liability, defendants entered into a stipulation whereby they agreed that they are 100% jointly and severally liable to plaintiffs and further agreed to apportion such liability between themselves at 90% to the bus defendants and the remaining 10% to the tractor-trailer defendants. The majority allows for a situation whereby the tractor-trailer defendants may end up paying more than the bus defendants because of the cap applied on noneconomic tort awards by Ontario—a patently absurd result. Therefore, to further the goal of predictability and uniformity, this matter should be analyzed under a single *Neumeier* analysis.

In analyzing this matter under a single *Neumeier* analysis, it is clear that, because plaintiffs and defendants are differently domiciled, the law of the site of the tort—here New York—should apply as set forth in the third *Neumeier* rule (*see* 31 NY2d at 128).[2] Moreover, the exception to the third *Neumeier* rule does not apply to these facts.

---

**2.** While the enumerated *Neumeier* rules describe situations with one plaintiff and one defendant, I see no reason why the rule should not be applied to situations, such as here, where there are multiple jointly and severally liable defendants (*see* Restatement [Second] of Conflict of Laws § 172).

Indeed, applying New York law here will not "impair . . . the smooth working of the multi-state system and produce great uncertainty for litigants by sanctioning forum shopping" (31 NY2d at 129 [internal quotation marks and brackets omitted]). New York was the site of the accident and the only state in which jurisdiction over all defendants could be acquired. New York is a proper location for this action and there is no indication that the cases were brought here on account of its favorable loss-allocation rules.

In addition, the exception to the third *Neumeier* rule should only apply when a state other than the forum-locus state has a "greate[r] interest in the litigation" (*see Schultz*, 65 NY2d at 197, quoting *Miller v Miller*, 22 NY2d 12, 15 [1968]; *see also Cooney*, 81 NY2d at 72). Here, it is uncontroverted that both defendants are commercial enterprises that perform significant business in the State of New York and more significantly are frequent users of New York's highways in pursuit of their business. New York has a strong interest in the conduct of business enterprises on its highways and in properly compensating the victims of torts, whether New York or foreign domiciliaries, committed by business enterprises on its highways (*see Sullivan v McNicholas Transfer Co.*, 224 AD2d 966, 967 [4th Dept 1996] [applying Ohio law to an accident in Ohio because "Ohio has a substantial interest in regulating conduct on its highways and in ensuring that those who use its highway(s) will compensate those whom they have injured"]).

Thus, in determining which forum has the greatest interest in this litigation, it is clear that it is New York. Not only does New York have a strong interest in regulating the conduct of commercial vehicles on its highways, it also has an even stronger interest in having commercial vehicles that use its highways maintain insurance to compensate victims of torts committed by said vehicles. In contrast, Ontario's primary interest in having its law applied and capping nonpecuniary losses is to keep motor vehicle insurance costs low (*see Arnold v Teno*, [1978] 2 SCR 287 ¶ 109). That interest, however, need not extend to commercial vehicles operating outside of Ontario and subject to the loss-allocation laws of those states.

Finally, because New York is "the only State with which [all] parties have purposefully associated themselves" (*Cooney*, 81 NY2d at 74) and availed themselves of New York highways for profit and tourism, applying New York law is entirely appropriate in this matter.

Accordingly, I would reverse the order of the Appellate Division.

Judges GRAFFEO, SMITH, PIGOTT and JONES concur with Judge READ; Judge CIPARICK dissents in part and votes to reverse in a separate opinion in which Chief Judge LIPPMAN concurs.

In each case: Orders modified, etc.