■ FIRST INTERSTATE CREDIT ALLIANCE, INC., Appellant, v ARTHUR ANDERSEN & Co., Respondent.—Order of the Supreme Court, New York County (Edward J. Greenfield, J.), entered on September 12, 1988, which granted defendant's motion for a protective order, is unanimously reversed on the law and the motion for a protective order denied, with costs and disbursements.

Plaintiff is a financial service company engaged in the business of financing the purchase of capital equipment through installment sales or leasing agreements. In the course of its operation, it provided certain loans to L. B. Smith, Inc. of Virginia, a seller and lessor of heavy construction equipment. Smith subsequently declared bankruptcy and defaulted on the sums advanced by plaintiff. The instant action was thereafter commenced against defendant Arthur Andersen &

Company, a national firm of certified public accountants which had prepared the financial statements upon which plaintiff allegedly relied when it extended credit to Smith. Although the complaint originally claimed both negligence and fraud on the part of defendant in performing the audit of Smith, the cause of action for negligence was ultimately dismissed by the Court of Appeals on the ground that the facts asserted by plaintiff "fail to demonstrate the existence of a relationship between the parties sufficiently approaching privity" (Credit Alliance Corp. v Andersen & Co., 65 NY2d 536, 553). The present appeal is from an order of the Supreme Court granting defendant's motion for a protective order with respect to certain material sought by plaintiff relating to the cause of action for fraud.

Specifically, defendant contends, and the Supreme Court agreed, that the Maryland accountant-client privilege precludes disclosure of Andersen's audit files. New York, it should be noted, has no comparable accountant-client privilege. It is plaintiff's position that the decision of the Supreme Court disallowing examination of the only available source of information concerning defendant's purported fraud in carrying out the subject audit constitutes, in effect, a denial of its right to prosecute this lawsuit.

In Schultz v Boy Scouts (65 NY2d 189, 196), the Court of Appeals stated that "[h]istorically, choice-of-law conflicts in tort actions have been resolved by applying the law of the place of the wrong", but, beginning with Babcock v Jackson (12 NY2d 473), "we departed from traditional doctrine, however, and refused to invariably apply the rule of lex loci delicti to determine the availability of relief for commission of a tort". Consequently, in Babcock v Jackson (supra, at 481), it was held that the "controlling effect" must be accorded "to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation". The Court of Appeals, in Schultz v Boy Scouts (supra, at 197), then proceeded to explain that later decisions of the court added necessary refinements so that: " '[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and * * * the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict' (Miller v Miller [22 NY2d 12], at pp 15-16 * * *). Under this formulation the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort".

Therefore, the Court of Appeals declared in *Schultz v Boy Scouts (supra,* at 197), "under present rules, most of the nondomicile and nonlocus contacts relied on in *Babcock v Jackson (supra)* * * * are no longer controlling in tort actions involving guest statutes". (In *Babcock v Jackson, supra,* New York law was applied to an action involving New York parties in which damages were sought for injuries suffered in an automobile accident in Ontario, Canada.) According to the Court of Appeals, decisions subsequent to *Babcock v Jackson (supra),* such as *Miller v Miller (supra), Tooker v Lopez* (24 NY2d 569), *Farber v Smolack* (20 NY2d 198) and *Neumeier v Kuehner* (31 NY2d 121) "also establish that the relative interests of the domicile and locus jurisdictions in having their laws apply will depend on the particular tort issue in conflict in the case" *(Schultz v Boy Scouts, supra,* at 198).

In the matter before us, the only connection between Maryland and this litigation is that Andersen's client, Smith, maintained its operations in that State and the audit occurred there. Balanced against these limited Maryland contacts is the fact that plaintiff is a New York corporation; defendant has a significant presence and is doing a great deal of business in New York; the purportedly fraudulent financial statements were prepared by defendant to be relied upon by a New York entity; these reports were then sent by Smith to New York and received by plaintiff in New York; and, finally, the injury was sustained by plaintiff in New York. Moreover, the accountant-client privilege belongs to the client, not the auditor, and Smith, in requesting to borrow funds from a New York lender and forwarding to that lender the reports of an audit undertaken precisely so that Smith could procure financing from a New York corporation, can scarcely have had a reasonable expectation that Maryland law would apply. Similarly, Maryland's interest in adopting an accountant-client privilege was "to create an atmosphere in which the client can feel free to discuss highly confidential and personal financial details with his accountant. Its purpose was not to enable either the client or the accountant to use it as a shield when charged with perpetrating a fraud" *(Dixon v Bennett,* 72 Md App 620, 642, 531 A2d 1318, 1329 [Ct Spec App 1987], *cert denied* 311 Md 557, 536 A2d 664). The statute was certainly not intended to facilitate an accountant in avoiding liability for fraudulent conduct causing harm to a third-party resident of another State. New York, on the other hand, clearly has an interest in assuring that its domiciliaries obtain redress in its courts for a fraud which might have been committed by a party having so

many contacts within this State as does defendant. Finally, while it is unnecessary to determine whether Andersen is judicially estopped from asserting the Maryland accountant-client privilege, the fact remains that fairness supports application of New York law in a situation, such as herein, where defendant succeeded in having the negligence cause of action against it dismissed by invoking the protection of the New York rule of privity and now endeavors to escape liability from the remaining cause of action by disclaiming New York law. Consequently, the Supreme Court was not warranted in granting defendant's motion for a protective order. Concur—Kupferman, J. P., Milonas, Ellerin, Smith and Rubin, JJ. *[See, 143 Misc 2d 685.]*