**Robert D. KRUMME, Plaintiff,**

v.

**WEST POINT–PEPPERELL, INC., Defendant.**

**No. 89 Civ. 2016 (KC).**

United States District Court, S.D. New York.

April 19, 1990.

---

Carolyn Jaffe & James Harbison, Morgan, Lewis & Bockius, New York City, for plaintiff.

Robert D. Krumme, Larchmont, N.Y., pro se.

Frank Carling, Withrop, Streson, Putnum & Roberts, James B. Liberman, Barclay, Israel & Liberman, New York City, for defendant.

## MEMORANDUM AND ORDER

CONBOY, District Judge:

Currently before the Court is an unusual motion—a motion by a non-party to withdraw his affidavit voluntarily given to the plaintiff and submitted by the plaintiff on his motion for summary judgment. Before discussing the legal ramifications of the motion, we will briefly set out the relevant facts.

Plaintiff, Robert D. Krumme ("Krumme"), worked for Cluett, Peabody & Co., Inc. ("Cluett") from 1969 to 1986. In 1986, Cluett was acquired by defendant, West Point–Pepperell, Inc. ("WPP") in a friendly takeover. Krumme left Cluett, along with the other senior executive officers, after its acquisition by WPP and the elimination of the corporate headquarters functions in New York City. Cluett now operates as a division of WPP. Since 1989, WPP has been controlled by William Farley, who acquired control after a hostile

takeover attempt.[1] On March 24, 1989, Krumme brought this suit against WPP seeking a lump sum payment of the deferred compensation allegedly owed to him under an amendment to a deferred compensation agreement as a result of the change in control at WPP. That amendment, as signed, calls for the actuarial assumptions contained in the Cluett Employee Retirement Plan (the "Plan") to be utilized in calculating his lump sum benefits.

On November 13, 1989, Krumme served a cross-motion for summary judgment and his papers in opposition to WPP's motion for partial summary judgment.[2] Included in those papers was an affidavit of F. Thomas Senior ("Senior"), a partner in the actuarial firm of Kwasha Lipton ("Kwasha"). Senior's affidavit relates, in large part, to Cluett's Plan. Senior had provided actuarial services to Cluett with respect to the Plan from 1969 until early 1987, at which time the actuary for WPP assumed full responsibility for Cluett's actuarial work.

On November 16, 1989, Krumme alleges that Senior telephoned Krumme's counsel to report that Earl Shanks, an employee of one of the companies controlled by William Farley, telephoned Kwasha to complain about Senior's testifying for or submitting an affidavit in support of the plaintiff in this action. Mr. Shanks purportedly demanded that Kwasha investigate what Shanks claimed was a conflict of interest. Apparently, another of William Farley's companies, Farley Northwest Industries, Inc. (now called Fruit of the Loom, Inc.), employs Kwasha to manage an employee savings plan. That savings plan account is not related to this action but does provide in excess of $100,000 a year in annual revenues for Kwasha.

On November 22, 1989, Senior, by counsel representing himself individually and Kwasha, moved to withdraw his November 13, 1989 affidavit (the "November 13 Affidavit") submitted by Krumme in support of his cross-motion for summary judgment. After reviewing the matter with other partners at Kwasha, and with Kwasha's counsel, Senior states that he concluded that the use of his affidavit "would involve an actual or potential conflict of interest on [his] part." See Affidavit of F. Thomas Senior, sworn to Nov. 22, 1989 ("Senior 11/22/89 Aff."), at ¶ 5. We note, however, that he is not attempting to withdraw his affidavit because it is false, misleading, or prejudicial, but solely because of this "conflict." Senior's motion to withdraw the November 13 Affidavit was submitted without a memorandum of law.

On November 29, 1989, Krumme applied for an order to show cause to bring on a motion to enjoin WPP and any of its affiliates, including William Farley, Farley, Inc., and Farley Northwest Industries, Inc., from directly or indirectly interfering with or bringing pressure on Krumme's witnesses in this action (including Senior) designed to prevent their testifying or submitting affidavits on Krumme's behalf and requested a temporary restraining order to this effect. Relying on defense counsel's assurances that they did not, and would not, interfere with or bring pressure on Krumme's witnesses, the Court concluded that a temporary restraining order was not necessary. Consequently, we arranged a briefing schedule for the motion to withdraw Senior's November 13 affidavit, inviting Senior [3] as well as WPP, who would also like to see the affidavit withdrawn, to present us with some authority for this extraordinary proposition. Krumme was also asked to submit papers in opposition.

---

**1.** Farley, Inc., of which approximately 76% is owned by William Farley, and its group of companies ("Farlety"), acquired WPP in the Spring of 1989. Farley first instituted a hostile tender offer in October of 1988 and then, after a battle for control involving the tender offer and a proxy fight, entered a Merger Agreement with WPP on February 23, 1989.

**2.** The summary judgment motions involve the issues of whether Mr. Krumme is entitled to this lump sum payment and if so, for what amount. We have entered an unpublished order this day denying WPP's motion in its entirety and granting Krumme's motion in part and denying it in part.

**3.** No further papers were received from Senior or Kwasha.

Essentially, the papers submitted raise three issues: whether an expert's testimony may be compelled; whether there is an actuary-client privilege; and whether the purposes of the Federal Rules of Evidence would be furthered or hindered by the withdrawal of the evidence.

*Compelling Expert Testimony*

█ WPP contends that Senior's testimony should be limited to his factual knowledge, for which he may be subpoenaed, and that any expert opinion voiced by Senior should be stricken or excluded. Krumme maintains that not only could he subpoena Senior to testify to his personal knowledge of the facts relating to this case, but he could also compel Senior to testify as to his expert testimony because there is no constitutional, common law or statutory privilege against the compulsion of expert testimony. In support of this proposition Krumme cites two federal cases: *Kaufman v. Edelstein*, 539 F.2d 811 (2d Cir.1976), *aff'g*, *United States v. International Business Machines Corp.*, 406 F.Supp. 178 (S.D.N.Y. 1975); *Carter–Wallace, Inc. v. Otte*, 474 F.2d 529, 535–38 (2d Cir.1972), *cert denied*, 412 U.S. 929, 93 S.Ct. 2753, 37 L.Ed.2d 156 (1973). While these cases do indeed stand for the proposition cited, it must be recognized that *Kaufman* was a federal antitrust action, and *Carter Wallace* was a patent infringement case. Accordingly, while these cases are relevant where federal law is applicable, because the present case is predicated upon diversity jurisdiction, the Court is *Erie* bound to apply state law to this issue. *Tenzer v. Lewitinn*, 599 F.Supp. 973, 975 (S.D.N.Y.1985). By contrast, the New York cases stand for the proposition that courts may "not ... compel a witness to give his opinion as an expert against his will." *People ex rel. Kraushaar Bros. & Co. v. Thorpe*, 296 N.Y. 223, 225, 72 N.E.2d 165 (1947). *Accord Heffernan v. Norstar Bank of Upstate New York*, 125 A.D.2d 887, 889, 510

N.Y.S.2d 248 (3d Dep't 1986); *In re Estate of Rothko*, 80 Misc.2d 140, 142, 362 N.Y. S.2d 673 (Surr.Ct.1974).[4] These cases, however, are distinguishable factually from the instant case.

In *People ex rel Kraushaar Bros.*, a tax certiorari proceeding, a relator subpoenaed an involuntary expert witness who previously had prepared an appraisal of the property in a suit for the prior owner. The witness refused to accept a fee and declined to testify as to the value of the premises. The trial court ruled the witness was required to testify with regard to what he had seen on the premises, as any lay witness would be required, but he had a right to refuse to answer questions pertaining to his expert opinion. *People ex rel. Kraushaar Bros.*, 296 N.Y. at 224, 72 N.E.2d at 166. The New York Court of Appeals affirmed, stating that "[w]e think the better rule is not to compel a witness to give his opinion against his will." *Id.* at 225, 72 N.E.2d at 166. The court in *Heffernan v. Norstar Bank*, 125 A.D.2d 887, 889, 510 N.Y.S.2d 248 (3d Dep't 1986), merely cited *People ex rel. Kraushaar Bros.*, for the proposition that an expert may refuse to give testimony unless compensated, but that issue was not the one before the court for resolution; rather, the court was looking at the competency of the expert's testimony. In *In re Rothko*, 80 Misc.2d 140, 142, 362 N.Y.S.2d 673, 675 (Surr.Ct.1974), an affidavit was solicited of an expert and submitted to the court in opposition to an application for a preliminary injunction. In the affidavit, the expert testified regarding price practices in the art field but did not offer his estimates for the particular paintings in issue, never having seen them to appraise them. At trial, the other side then sought to subpoena this witness to give expert testimony on the valuation of the particular art works in question. The court quashed the subpoena, citing *People ex rel. Kraushaar Bros.*, that an expert

---

**4.** Although state law is being applied in this case, it is worth noting that a court in this district has allowed an expert's affidavit that was previously submitted to the court in connection with an earlier summary judgment motion to be admitted into evidence at trial over

the expert's objection. In that case, a civil rights case, the witness claimed, as does the witness here, that there was a conflict of interest between the expert and the party "against" whom the expert testified. *See Barrett v. United States,* 651 F.Supp. 606 (S.D.N.Y.1986).

should not be compelled to give his opinion against his will.

We observe that these cases concern an expert's testimony at trial. Furthermore, the experts in *People ex rel. Kraushaar Bros.* and in *In re Rothko* were subpoenaed against each's will. The purpose of the rule, as set out in the New York case authority, is not to compel experts to perform work that they do not want to do. An ancillary purpose is that no expert should have to work *pro bono.* Thus, applying the rule of *People ex rel. Kraushaar Bros.* to the instant case, we note that neither Senior nor WPP challenges Senior's competence or his ability to serve as an expert witness, although WPP does ask that his testimony be excluded since they claim it was based on the "confidential work performed for the opposing party." WPP's Brief in Support of Motion to Withdraw Affidavit at 5. Furthermore, this is not a case where an expert is being compelled to perform work against his will. Senior's work, a fifteen page affidavit which undoubtedly required considerable time to prepare, is already completed. Moreover, we must assume that he was well aware of what he was doing when he submitted the sworn statement to this court of his own volition. Thus, we conclude that, Senior should not be afforded the protection of the New York case authority discussed above on this summary judgment motion, given that his affidavit was not compelled, but rather, he *voluntarily* allowed it to be presented to the court.[5]

### The Actuary/Client Privilege

WPP and Senior next argue that Senior should be allowed to withdraw his affidavit because it would involve an actual or *potential* conflict of interest. Senior 11/22/89 Aff. at ¶ 5. Senior claims that this potential conflict of interest or the appearance of a conflict of interest, is in violation of the Guides to Professional Conduct of the American Academy of Actuaries (the "Code"), specifically Guides 2(b) and 2(d).[6] *See* WPP's Brief in Support of Motion to Withdraw Affidavit, Exhibit A for full text of the Code. We note, however, that Senior does not delineate the parameters of this conflict in his November 22 affidavit or in any of the other papers submitted in support of the motion to withdraw the affidavit.

■ The Supreme Court has held that " 'the public … has a right to everyman's evidence,' except for those persons protected by a constitutional, common law, or statutory privilege." *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). (Citations omitted.) Simply because information may have been communicated in confidence does not necessarily create a privilege. In the absence of a statute or judicially created exception to the contrary, a "confidential communication between partners, or to a clerk, trustee, commercial agency, banker … broker, employee of an adjustment bureau, surety or accountant" is not privileged from disclosure. 8 J. Wigmore, *Evidence* § 2286 at 529–30 (McNaughton rev.1961).

---

5. At this time, we decline to rule on whether or not Senior may be compelled to testify as to his expert opinions at trial, or even whether he is qualified as an expert.

6. Guides 2(b) and 2(d) provide:
 *Relationship and Responsibility of the Actuary to Clients and Employers*
 (b) The member will act for each client or employer with scrupulous attention to the trust and confidence that the relationship implies and would have due regard for the confidential nature of professional work.

 . . . . .

 (d) The member will not perform an actuarial service in any situation in which there is or

may be a conflict of interest, whether one or more clients or employers are involved, if the conflict makes or is likely to make it difficult to act independently. In any situation in which there is either the appearance, or the potential, of a conflict of interest the member will not act unless there has been full disclosure of the situation to the parties involved and the parties have expressly agreed to the member's performance of the service.
WPP's Brief in Support of Motion to Withdraw Affidavit, Exhibit A.

 We have examined the law of the state of New York and found that the statutes and cases are silent on the actuary-client privilege. In light of the rough similarity of the work performed by accountants and actuaries, it would only seem fair to extend any privileges accountants may enjoy to actuaries. New York does not recognize, however, an accountant-client privilege. In *First Interstate Credit Alliance, Inc. v. Arthur Andersen & Co.*, 150 A.D.2d 291, 541 N.Y.S.2d 433 (1st Dep't 1989), the First Department refused to apply Maryland law which recognizes an accountant-client privilege. The court went on to say, "New York, it should be noted, has no comparable accountant-client privilege." *Arthur Andersen & Co.*, 150 A.D.2d at 292, 541 N.Y.S.2d at 434.[7]

In recognizing any type of privilege, often valuable evidence is precluded from being brought before the court. Therefore, in allowing certain privileges, the courts and legislators have weighed the policy concerns of the privilege against the value of having the evidence before the court. It is clear that the New York courts and legislators have not thought that the benefits of protecting the confidences between an actuary and a client or an accountant and a client are great enough to create a statutory or common law privilege. Consequently, even if Senior were violating the Guides to Professional Conduct of the American Academy of Actuaries, that Code does not create a privilege or confidence protected by the law and, therefore, this infraction is not sufficient reason to warrant the withdrawal of an affidavit he has already voluntarily submitted to this Court.

*Fed.R.Evid. 102*

 WPP's final argument is that, "[t]his Court, which is charged with 'secur[ing] fairness in administration' of the Rules of Evidence, Fed.R.Evid. 102, should not compel Senior to be held accountable for the November 13 Affidavit's contents and thus to violate the code of his profes-

sion." WPP's Brief in Support of Motion for Permission to Withdraw Affidavit at 5. This plea for equity becomes much less appealing considering our conclusion that the law does not recognize Senior's professional code.

Additionally, when considering Rule 102, it should be noted that the core provisions of the Federal Rules of Evidence were "chiefly designed to serve th[e] fundamental and comprehensive need in our adversary system to develop all relevant facts before the trier [of fact]". *Lora v. Board of Education*, 74 F.R.D. 565, 578 (E.D.N.Y. 1977). Furthermore, if WPP had quoted the entire Rule 102, rather than one portion of it out of context, it becomes evident that we must protect other interests as well. Specifically, the court should also be concerned with the "elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Fed.R.Evid. 102.

In the present case, Senior's affidavit is fifteen pages long, containing thirty-nine paragraphs of detailed information and combining facts with his professional opinion. Allowing him to remove this affidavit from the consideration of this Court on the summary judgment motion would require Krumme to submit a substitute. This would only serve to lengthen the proceedings and increase the expenses of this litigation. Moreover, we must be concerned with "the development of the law of evidence" and the ascertainment of truth, which interests, as we discussed above, would not be served by permitting the affidavit to be withdrawn. Accordingly, we conclude that Rule 102 also requires a denial of the motions to withdraw Senior's affidavit.

In sum, we conclude that Senior's and WPP's motions to withdraw an affidavit that has already been filed with this court,

---

**7.** Even though state law is applicable, it should be noted that the Second Circuit does not recognize the accountant-client privilege either. *See United States v. Bein*, 728 F.2d 107, 112 (2d Cir.1984) (in case involving federal fraud con-

victions, court stated that "there is no accountant-client privilege in this circuit"), *cert. denied*, 469 U.S. 837, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984).

not because it is false, misleading, or prejudicial, but rather, because they believe it creates an actual or potential conflict under Senior's professional code, must be denied. Neither New York law nor federal law in this circuit recognizes an actuary-client privilege, let alone a roughly similar accountant-client privilege. Furthermore, failure to release Senior from an affidavit already filed would not be contrary to the spirit of Fed.R.Evid. 102. Finally, this is not a situation which conflicts with the New York rule that prohibits the compulsion of expert testimony, because Senior voluntarily submitted the affidavit to this Court. Accordingly, we will consider the information supplied in Senior's November 13 affidavit on the cross-motions for summary judgment.

SO ORDERED.