OPINION OF THE COURT
Hall, J.
On this appeal, we are asked to consider, among other issues, whether the courts of the State of New York may exercise judicial review over administratively issued subpoenas, which were served in New York in connection with a California tax proceeding, pursuant to the newly enacted CPLR 3119. We answer this question in the affirmative.
The petitioner, Gilbert E Hyatt, is a successful inventor who has been granted more than 70 patents related to computer technology. In July 1991, while he was a California resident, Hyatt entered into an exclusive licensing agreement with a New York company, the U.S. Philips Corporation (hereinafter Philips). Pursuant to the licensing agreement, Hyatt granted Philips a license under a group of his patents for Philips’s own use, and also granted Philips an exclusive right to license other companies under a group of his patents. Philips started a successful licensing program, which generated more than $350 million for both it and Hyatt in late 1991 through 1995. In early 1991, a patent interference proceeding was brought to challenge one of Hyatt’s patents that Philips had licensed. Pursuant to the licensing agreement, Philips assumed responsibility for defending the patent interference proceeding. Hyatt assisted Philips’s in-house counsel in connection with the defense in that proceeding.
This appeal stems from tax proceedings involving Hyatt in California. For the tax year 1991, Hyatt filed a part-year resident income tax return in California, claiming that he moved to Nevada on September 26, 1991. In 1993, the respondent State of California Franchise Tax Board (hereinafter the Tax Board), an independent California tax agency with a statutory duty to administer and enforce the California Tax Code (see Cal Rev & Tax Code § 19501), commenced an audit of Hyatt with respect to his 1991 part-year resident income tax return. Subsequently, in 1996, the Tax Board issued an assessment of taxes, penalties, and interest against Hyatt, based on its determination that he was a full-year resident of California in 1991. In response, Hyatt filed a formal protest challenging the assessment, which resulted in an internal review by the Protest Division of the Tax Board. *191 Also in 1996, the Tax Board commenced a second audit of Hyatt for the 1992 tax year, based on its finding that Hyatt did not become a nonresident of California until April 3, 1992. The Tax Board issued another assessment pursuant to its second audit, which included civil fraud penalties. Hyatt filed a protest challenging this assessment as well, resulting in Protest Division review.
The Protest Division did not complete its investigation of Hyatt’s challenges until 2007, 11 years after its review process began. While the Protest Division’s investigation was pending, Hyatt filed a lawsuit against the Tax Board in Nevada, alleging that it had committed several torts against him during the course of the audit. Issues raised in that litigation with respect to the Full Faith and Credit Clause of the United States Constitution and sovereign immunity were appealed, ultimately to the United States Supreme Court, which upheld Nevada’s refusal to give full faith and credit to California’s statute immunizing the Tax Board from lawsuits alleging intentional torts (see Franchise Tax Bd. of Cal. v Hyatt, 538 US 488 [2003]). According to the briefs submitted by the parties on this appeal, the Nevada jury eventually awarded a judgment to Hyatt in the sum of $490 million, and an appeal in that litigation is pending.
On November 1, 2007, the Tax Board issued its final determination upholding the assessments. Hyatt filed an administrative appeal with the California Board of Equalization (hereinafter the Board of Equalization), which is a five-member board that, among other things, hears income tax appeals from final determinations of the Tax Board.
In August 2010, Hyatt filed his reply brief in the administrative appeal, which included 34 new affidavits and exhibits. The reply brief specifically identified several individuals in Philips’s New York in-house patent or executive offices who were involved with Hyatt in licensing his patents during the disputed period. Aonong these individuals were attorneys Jake Haken and Algy Tamoshunas, who served as Philips’s in-house counsel.
On March 11, 2011, at the Tax Board’s request, the Chief Counsel for the California State Controller issued subpoenas duces tecum on nonparties including Philips, and its in-house attorneys, Haken and Tamoshunas. In his declaration in support of the subpoenas, the Tax Board’s counsel stated that the primary issues in the tax appeal were whether Hyatt became a nonresident of California in 1991, whether a fraud penalty was properly imposed on Hyatt, and whether Hyatt operated a busi *192 ness from California through December 1992 that generated California “source income.”
The subpoenas sought, inter alia, all documents related to the licensing and sublicensing of Hyatt’s patents, the patent interference proceeding, negotiation of the licensing agreement and supplemental agreements, payment for sublicenses, communications concerning certain patents or communications with Hyatt, and billing of counsel for work performed relating to Hyatt.
On April 13, 2011, the Tax Board, through the California Attorney General, petitioned the California Superior Court for clerk’s orders for the issuance of commissions for out-of-state depositions of nonparties including Philips, Haken, and Tamoshunas, and to compel the nonparties to comply with the previously issued subpoenas. The clerk of the California Superior Court granted the Tax Board’s petition, and issued commissions to take the depositions of Philips’s custodian of records, and its attorneys Haken and Tamoshunas, and to have them produce the subpoenaed documents. Pursuant to CPLR 3119, New York counsel for the Tax Board had the subpoenas issued and served on Philips, Haken, and Tamoshunas in New York.
Hyatt subsequently commenced this proceeding to quash the subpoenas served upon Philips, Haken, and Tamoshunas pursuant to CPLR 3119 (e), 3103, and 2304. Hyatt maintained that the Tax Board lacked the authority to issue the subpoenas without permission from the Board of Equalization. In the alternative, Hyatt sought a protective order pursuant to CPLR 3103: (1) limiting the scope of the subpoenas to cover only material and necessary information, (2) conditioning the production of any responsive documents so that Hyatt could first review them to prevent the disclosure of his “common interest privileged” materials, and (3) regulating any production according to an appropriate confidentiality order.
In a supporting affidavit, Hyatt argued that the documents sought from Philips contained information protected by the common-interest privilege because, pursuant to the licensing agreement, he and Philips had a common interest in licensing the patents and protecting the patents from challenges.
Hyatt also objected to the scope of the disclosure demanded by the Tax Board, arguing that the subpoenas sought virtually every document Philips had regarding its licensing of his patents and the patent interference proceeding, even though such docu *193 merits had no relevance to the question of whether he became a Nevada resident on September 26, 1991, or April 3, 1992.
In response, the Tax Board argued that it did not need the permission of the Board of Equalization to take discovery and issue subpoenas. According to the Tax Board, the rules of the Board of Equalization specifically allowed for either party to submit evidence up to 14 days before the hearing, or even at the hearing. The Tax Board further argued that the subpoenas were not overbroad because they sought documentation which was relevant to, or designed to lead to evidence relevant to, the tax and penalty issues in the underlying tax proceeding. The Tax Board maintained that its inquiry was not limited to events within the calendar years 1991 and 1992, and that facts from years prior and subsequent to the audit years were routinely analyzed. At oral argument before the Supreme Court, the Tax Board additionally argued that Hyatt did not have standing to contest the subpoenas. The Tax Board further argued that the subpoenas were deserving of full faith and credit by the New York courts.
In an order dated July 27, 2011, the Supreme Court granted Hyatt’s petition to the extent of modifying the subpoenas by (1) striking all demands regarding the prosecution of Hyatt’s patents and the patent interference proceeding, (2) limiting the demands of the subpoena duces tecum to material relating to the 1991 and 1992 tax years with respect to the issues of Hyatt’s residency and income received in 1991 and 1992, his relationship to Philips, and the licensing of his patents and any revenue generated from the licensing of his patents in 1991 and 1992, and (3) limiting the depositions to the same issues (33 Mise 3d 500 [2011]). That branch of Hyatt’s petition which sought a protective order was denied.
In its decision, the Supreme Court noted that the commissions were issued by a clerk of a California court and the subpoenas were issued in New York by New York counsel. Thus, the Supreme Court observed that no judicial review of the subpoenas had occurred. The Supreme Court further noted that the subpoenas were served pursuant to the newly enacted CPLR 3119, which provides that out-of-state judicial subpoenas can be submitted to either the county clerk or an attorney licensed in New York, but does not require judicial review of the subpoenas before they are served.
The Supreme Court determined that Hyatt had standing to seek an order quashing the subpoenas. The Supreme Court *194 reasoned that, as a party to the administrative tax appeal for which the discovery was sought, he had statutory standing under CPLR 2304. Moreover, the Supreme Court found that Hyatt had a proprietary interest in certain confidential information sought by the subpoenas; specifically, documents that contained information regarding the prosecution and defense of his patents.
The Supreme Court found that the Tax Board had the authority to issue the subject subpoenas under California Revenue & Tax Code § 19504 (b). In addition, the Supreme Court found that the Full Faith and Credit Clause was inapplicable to the enforcement of the California Superior Court’s commissions since the clause only applies to judgments.
The Supreme Court further rejected the contention that the subpoenas should be enforced without modification under principles of comity, reasoning that it would be more inclined to do so had the California court conducted some form of judicial review over the subpoenas.
As to the scope and breadth of the subpoenas, the Supreme Court limited them to material related to tax years 1991 and 1992 with respect to the issues of Hyatt’s residency and income received in those years, his relationship with Philips, and the licensing of his patents and any revenue generated therefrom in 1991 and 1992. The depositions of Haken, Tamoshunas, and Philips’s custodian of records were likewise limited. The Supreme Court struck the demands for materials relating, inter alia, to the patent interference proceeding.
As to Hyatt’s assertion of a common-interest privilege, the Supreme Court found that New York law, and not Nevada law, applied. Applying New York law, the Supreme Court rejected Hyatt’s invocation of the common-interest privilege as to the documents it directed to be produced, since Hyatt had not demonstrated the existence of an attorney-client relationship between himself and Philips’s in-house counsel.
Hyatt appeals and the Tax Board cross-appeals from the Supreme Court’s order. We affirm the order in all respects.
Discussion
I. Standing
We first address the threshold issue of whether Hyatt has standing to bring this proceeding.
A person other than one to whom a subpoena is directed has standing to move to quash the subpoena where he or she has a *195 proprietary interest in the subject documents or where they involve privileged communications (see 38-14 Realty Corp. v New York City Dept. of Consumer Affairs, 103 AD2d 804 [1984]; Matter of State of N.Y. Comm. on Governmental Operations of City of N.Y. v Manhattan Water Works, 10 AD2d 306 [1960]; Foster v Kenny, 139 App Div 769 [1910]). “[A] party whose rights are invaded by such process may apply to the court, whose duty it is to enforce it, [or] to set aside such process if it is invalid” (Foster v Kenny, 139 App Div at 780).
Here, the subpoenas seek material concerning Hyatt’s patents, in which Hyatt has a proprietary interest (see 38-14 Realty Corp. v New York City Dept. of Consumer Affairs, 103 AD2d at 804; Morano v Slattery Skanska, Inc., 18 Misc 3d 464 [2007]). Indeed, Hyatt owns the intellectual property consisting of his patents, which he licensed to Philips. Therefore, Hyatt has standing to challenge the subpoenas. In addition, as a party to the underlying tax proceeding, Hyatt has standing to seek a protective order (see CPLR 3103 [a]). Accordingly, the Supreme Court properly determined that Hyatt has standing to bring this proceeding.
II. The Tax Board’s Authority to Issue the Subpoenas
Next, we consider whether the Tax Board has the authority to issue the subpoenas, even though the underlying tax proceeding is pending on appeal before the Board of Equalization.
The Tax Board is a three-member board consisting of the State Controller, Director of Finance, and Chairman of the Board of Equalization (see Cal Govt Code § 15700). The Tax Board administers and enforces the income tax laws of California (see Cal Rev & Tax Code § 19501). Its duties include “ascertaining the correctness of any return; making a return where none has been made; [and] determining or collecting the liability of any person [for income and certain other taxes]” (Cal Rev & Tax Code § 19504 [a]). For the purpose of administering such duties, the Tax Board has been granted broad statutory powers, including a broad subpoena power (see People ex rel. Franchise Tax Bd. v Superior Ct., 164 Cal App 3d 526, 536 [1985], overruled on other grounds by Dana Point Safe Harbor Collective v Superior Ct., 51 Cal 4th 1, 11 n 6, 243 P3d 575, 581 [2010]). Under California Revenue & Tax Code § 19504, the Tax Board:
“shall have the power to require by demand, that *196 an entity of any kind including, but not limited to, employers, persons, or financial institutions provide information or make available for examination or copying at a specified time and place, or both, any book, papers, or other data which may be relevant to that purpose” (Cal Rev & Tax Code § 19504 [a]).
The Tax Board may issue subpoenas or subpoenas duces tecum, which must be signed by any member of the Tax Board, “and may be served on any person for any purpose” (Cal Rev & Tax Code § 19504 [c] [1]). Obedience of such subpoenas may be enforced by petition to the California Superior Court (see Cal Rev & Tax Code § 19504 [d]; Cal Govt Code § 11187 [c]).
Hyatt contends that this broad subpoena power ended once the Tax Board submitted to the jurisdiction of the Board of Equalization. However, there is nothing in the statutes or regulations of California so limiting the Tax Board’s subpoena power.
When the Tax Board issues a deficiency assessment, the taxpayer may file a protest (see Cal Rev & Tax Code § 19041). The Tax Board then reconsiders the assessment (see Cal Rev & Tax Code § 19044). The Tax Board’s action upon the protest is final unless the taxpayer appeals to the Board of Equalization (see Cal Rev & Tax Code § 19045). The Board of Equalization hears and determines the appeal and notifies the taxpayer and the Tax Board of its determination (see Cal Rev & Tax Code § 19047). Either the Tax Board or the taxpayer may request rehearing by the Board of Equalization (see Cal Rev & Tax Code § 19048). Where the deficiency assessment concerns an issue of residency, the taxpayer may commence a court action against the Tax Board to determine the residency issue (see Cal Rev & Tax Code § 19381).
Here, Hyatt filed two protests. The Tax Board investigated and issued its determination upholding the assessments. Hyatt then appealed to the Board of Equalization, where the matter is awaiting a hearing. Hyatt contends that the Tax Board lost its subpoena power upon his appeal to the Board of Equalization. However, the governing regulations do not support this contention and actually imply the opposite by permitting new evidence upon the administrative appeal.
The procedure for an appeal to the Board of Equalization from a determination of the Tax Board is governed by regulations of the Board of Equalization in its Rules for Tax Appeals (see Cal Code Regs tit 18, § 5000 et seq.). The Tax Board sets *197 the briefing schedule and may extend it upon application, as well as permitting additional briefing (see Cal Code Regs tit 18, §§ 5430, 5431). The Board of Equalization may also request additional briefing or evidence during or after the briefing schedule (see Cal Code Regs tit 18, §§ 5435, 5443).
By statutory authority, the Board of Equalization may issue subpoenas for the attendance of witnesses or production of documents (see Cal Govt Code § 15613; Cal Code Regs tit 18, § 5523.5 [b]). According to the Rules for Tax Appeals, parties may apply for such a subpoena (see Cal Code Regs tit 18, § 5523.5 [b]). Any relevant evidence may be presented to the Board of Equalization for the hearing (see Cal Code Regs tit 18, § 5523.6 [a]). Parties should submit documentary evidence to the Board of Equalization and the opposing party at least 14 days prior to the hearing, although the Board of Equalization may permit a party to submit documentary evidence at the hearing (see Cal Code Regs tit 18, § 5523.6 [b]).
As the Tax Board correctly contends, there is nothing in the statutory authorization of subpoenas by the Board of Equalization which supplants the subpoena power of the Tax Board. Likewise, the Board of Equalization’s Rules for Tax Appeals do not provide for the Board of Equalization’s subpoena power to supplant or otherwise limit the subpoena power of the Tax Board. The Tax Board’s subpoena power is statutory and, thus, cannot be abrogated in any event by regulations of the Board of Equalization (see Selby v Department of Motor Vehs., 110 Cal App 3d 470 [1980]). Therefore, while the admission of evidence at a Board of Equalization hearing is governed by Board of Equalization rules, the Tax Board may obtain such evidence through its subpoena power.
Accordingly, the Tax Board had the authority to issue the subpoenas, even while Hyatt’s appeal to the Board of Equalization was pending.
III. Scope of the Subpoenas
We now consider whether the Supreme Court properly limited the scope of the subpoenas. The Tax Board takes the position that the Supreme Court should have fully enforced the subpoenas, without limiting their scope, pursuant to the Full Faith and Credit Clause of the United States Constitution and principles of comity. However, we find that the Supreme Court properly subjected the subpoenas to judicial review and properly limited the scope of the subpoenas.
*198 A. Full Faith and Credit Clause
The Full Faith and Credit Clause of the United States Constitution provides: “Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof” (US Const, art iy § 1).
“Under the Full Faith and Credit Clause a ‘judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced’ ” (Matter of Luna v Dobson, 97 NY2d 178, 183 [2001], quoting Underwriters Nat. Assurance Co. v North Carolina Life & Accident & Health Ins. Guaranty Assn., 455 US 691, 704 [1982]). The purpose of the clause is “to avoid the duplicate litigation of issues which have been determined by the courts of another state” (Matter of Bennett, 84 AD3d 1365, 1367 [2011]; see Matter of Luna v Dobson, 97 NY2d at 182).
The Tax Board is technically correct that the Full Faith and Credit Clause is not limited to judgments, since, in certain limited situations, courts must apply the statutory law of another state pursuant to the clause (see Nevada v Hall, 440 US 410, 421 [1979]). However, that situation is not presented here, where the Tax Board is asking the New York courts to accord full faith and credit to administratively issued subpoenas that were never subjected to judicial review. Moreover, the clause is only exacting in its requirements where judgments are concerned (see Franchise Tax Bd. of Cal. v Hyatt, 538 US at 494).
Here, the subpoenas are not judgments of the California courts to which full faith and credit must be granted. Indeed, the propriety of the subpoenas was never determined by the courts of California. Accordingly, the Full Faith and Credit Clause does not apply here.
B. Comity and CPLR 3119
Given the lack of prior judicial review over the subpoenas, the Supreme Court properly refused to fully enforce the subpoenas pursuant to principles of comity.
Where the Tax Board issues and serves a subpoena in California which is resisted, the Tax Board may enforce the subpoena by petition to the California Superior Court (see Cal Rev & Tax Code § 19504 [d]; Cal Govt Code § 11187 [c]). The California Superior Court may review the objections of the person served *199 with the subpoena as to whether the subpoena was regularly issued and whether the information sought is reasonably relevant to the duties of and intended investigation by the Tax Board (see Union Pac. R.R. Co. v State Bd. of Equalization, 49 Cal 3d 138, 146-147, 776 P2d 267, 271 [1989]; People ex rel. Franchise Tax Bd. v Superior Ct., 164 Cal App 3d at 539-540). The California Superior Court may also deny enforcement where the subpoena seeks information protected by a privilege or First Amendment associational privacy (see Pacific-Union Club v Superior Ct., 232 Cal App 3d 60, 70 [1991]).
However, where the Tax Board seeks a commission to serve a subpoena out of state, there is no statutory procedure for judicial review of objections. California law provides for the following procedures:
“On request, the clerk of the court shall issue a commission authorizing the deposition in another state or place. The commission shall request that process issue in the place where the examination is to be held, requiring attendance and enforcing the obligations of the deponents to produce documents and electronically stored information and answer questions. The commission shall be issued by the clerk to any party in any action pending in its venue without a noticed motion or court order. The commission may contain terms that are required by the foreign jurisdiction to initiate the process. If a court order is required by the foreign jurisdiction, an order for a commission may be obtained by ex parte application” (Cal Code Civ Proc § 2026.010 [f]).
Thus, the commissions for the subject subpoenas were issued by a clerk of the California Superior Court without any judicial review. The Tax Board then had the subpoenas issued and served in New York pursuant to the newly enacted CPLR 3119, also without any judicial review (see Cal Code Civ Proc § 2026.010 [c] [where the deponent is not a party, service is to be made pursuant to the laws of the jurisdiction where served]).
CPLR 3119 became effective in 2011 (see L 2010, ch 29, § 4). The statute provides that, to request issuance of a subpoena under the section, a party must submit an out-of-state subpoena to the county clerk in the county in which discovery is sought to be conducted. An out-of-state subpoena is defined in the statute as “a subpoena issued under authority of a court of record of a state other than this state” (CPLR 3119 [a] [1]). *200 Here, the clerk of the California Superior Court issued commissions to take the depositions of Haken, Tamoshunas, and Philips’s custodian of records, and to have them produce the documents requested by the subpoenas. Thus, the subject subpoenas were issued under authority of a court of record of a state other than New York and, thus, qualify as out-of-state subpoenas under CPLR 3119.
Pursuant to CPLR 3119 (b) (2), when a party submits an out-of-state subpoena to the county clerk in the county in which discovery is sought, the county clerk shall, subject to the provisions of CPLR article 23 (which provides for motions to quash or modify subpoenas), “promptly issue a subpoena for service upon the person to which the out-of-state subpoena is directed” (CPLR 3119 [b] [2]). However, notwithstanding that provision, a subpoena may be issued by a party’s counsel who is an attorney licensed to practice in this state (see CPLR 3119 [b] [4]). Here, the Tax Board had the subpoenas issued by its New York counsel.
Accordingly, the subpoenas—although properly issued—were never subject to any judicial review. Although the Tax Board’s subpoena power is broad, it is not unlimited. Indeed, some judicial review with regard to the scope of subpoenas and privileged materials is contemplated by the statutes of both California and New York.
CPLR 3119 expressly contemplates such review of subpoenas issued under the section. The statute provides that an application to the court for a protective order or to enforce, quash, or modify a subpoena issued under the section must comply with the rules or statutes of New York and be submitted to the court in the county in which discovery is to be conducted (see CPLR 3119 [e]).
The provisions of CPLR 3119 come from the Uniform Interstate Depositions and Discovery Act, which was promulgated by the National Conference of Commissioners of Uniform State Laws in 2007. According to the Recommendations of the Advisory Committee on Civil Practice, “[t]he Act sets forth an efficient and inexpensive procedure for litigants to depose out-of-state individuals and for the production of discoverable materials that may be located outside the trial state” (Report of the Advisory Committee on Civil Practice, at 26 [2009], available at http://nycourts.gov/ip/judiciaryslegislative/2009 %20Civil%20Practice%20ADV%20Report.pdf). Further, “[t]he Act requires minimal judicial oversight since there is no need to *201 present the matter to a judge in the discovery state before a subpoena is issued” (id.).
The Uniform Act was amended by the New York Legislature to expressly provide for issuance of a subpoena by local counsel and to reference CPLR articles 23 and 31 so as to make explicit that those articles apply to the section (see id.). As to the jurisdiction of New York courts over subpoenas issued pursuant to the Act, the Recommendations state:
“Discovery authorized by the subpoena must comply with the rules of the state in which it occurs. Furthermore, motions to quash, enforce, or modify a subpoena issued pursuant to the Act shall be brought in and governed by the rules in the discovery state. The county clerk in the discovery state acts in a purely ministerial role, but in a manner that is sufficient to invoke jurisdiction of the discovery state over the deponent. The Act recognizes that the discovery state has a significant interest in protecting its residents who become non-party witnesses in an action pending in another jurisdiction from unreasonable or burdensome discovery requests” (id.).
Accordingly, based on the language of the statute and its legislative history, the Supreme Court properly declined to give the subpoenas full effect under principles of comity, and properly undertook judicial review of the subpoenas as contemplated in CPLR 3119.
C. Relevancy
Furthermore, the Supreme Court properly limited the scope of the subpoenas to materials relevant to the underlying tax proceeding.
Generally, the standard to be applied on a motion to quash a subpoena duces tecum “is whether the requested information is ‘utterly irrelevant’ to any proper inquiry” (Gertz v Richards, 233 AD2d 366, 366 [1996]). The person challenging the subpoena bears the burden of demonstrating the utter irrelevancy of the demands (id.; see Matter of Hogan v Cuomo, 67 AD3d 1144 [2009]).
However, administrative subpoenas stand on different footing. Public agencies do not have carte blanche in issuing investigative subpoenas. A witness subject to such a “nonjudicial” or “office” subpoena may always challenge the subpoena *202 in court on the ground that it calls for irrelevant or immaterial documents or subjects the witness to harassment (see Matter of Parkhouse v Stringer, 12 NY3d 660, 665-666 [2009]; Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256 [1973]; Matter of New York City Dept. of Investigation v Passannante, 148 AD2d 101, 104 [1989]). When a nonjudicial subpoena is challenged on the ground that the materials sought are irrelevant, “it is incumbent upon the issuer to come forward with a ‘factual basis’ which establishes the relevancy of the items sought to the subject matter of the investigation before a witness will be compelled to comply with the subpoena’s mandate” (Virag v Hynes, 54 NY2d 437, 441-442 [1981], quoting Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d at 258). The issuer must demonstrate that the materials sought have “a reasonable relation to the subject matter under investigation and to the public purpose to be achieved” (Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 332 [1988] [internal quotation marks omitted]; see Virag v Hynes, 54 NY2d at 442; Matter of Goldin v Greenberg, 49 NY2d 566, 571-572 [1980]; Carlisle v Bennett, 268 NY 212, 217 [1935]).
While the Tax Board correctly states that courts should afford the widest possible latitude in out-of-state disclosure, this principle applies when a court of another state has already reviewed the subpoena, a circumstance not present here (see Matter of Ayliffe & Cos., 166 AD2d 223 [1990]).
The underlying tax appeal concerns Hyatt’s income in 1991 and 1992 from his patent licensing business with Philips. Thus, materials regarding the licensing business in those years are relevant. However, the Tax Board has failed to establish that materials related to the patent interference proceeding or the prosecution of Hyatt’s patents are relevant.
As to materials related to the patent interference proceeding, the Tax Board contends only that communications between Hyatt and Philips employees concerning the interference proceeding would be relevant to Hyatt’s residency and source of income if they were directed to Hyatt in California. This argument, however, implicitly acknowledges that the subject matter of the patent interference proceeding is not reasonably related to Hyatt’s residency or tax liability for his licensing business in the audit years.
The Tax Board makes no argument specific to the materials related to the prosecution of Hyatt’s patents in the United States Patent and Trademark Office and, indeed, we find such *203 documents to be irrelevant to the issues in the underlying tax proceeding. By definition, pending patents are not yet issued and no income has yet been received in connection with them. Accordingly, documents related to the prosecution of new patents cannot be relevant to Hyatt’s income in the audit years. Thus, the Tax Board failed to establish that those demands had a reasonable relation to the subject matter of the investigation (see Anheuser-Busch, Inc. v Abrams, 71 NY2d at 332; Virag v Hynes, 54 NY2d at 442).
The Tax Board further contends that the Supreme Court improperly limited the demands to those related to the 1991 and 1992 audit years. The Tax Board maintains that facts from years beyond the audit years can shed light on questions of residency and source of income, and are routinely analyzed. However, we agree with the Supreme Court that such explanation is conclusory and insufficient. That other years are routinely analyzed does not establish that information outside the audit years is relevant to Hyatt’s income and residency in the audit years {see Virag v Hynes, 54 NY2d at 441-442). Indeed, just because a particular practice is done routinely does not mean that it is proper.
We acknowledge that different reasoning was employed by the Court of Appeal of California, Third Appellate District, in an unpublished decision, made at an earlier stage of the administrative process (see State Franchise Tax Bd. v Hyatt, 2003 WL 23100266, 2003 Cal App Unpub LEXIS 12227 [Cal App 3d 2003]). During the protest stage, Hyatt sought appellate review of an order of the California trial court compelling him to comply with a Tax Board subpoena seeking documents he had already disclosed in the Nevada tort action. Specifically, the subpoenas sought the deposition transcripts and related document production of Hyatt’s certified public accountant and tax attorney in the Nevada tort action. Hyatt argued that those requests were overbroad and irrelevant to the tax years at issue. The California appellate court directed compliance, refusing to limit the requests to the disputed period of September 1991 to April 1992. The California appellate court stated that Hyatt had failed to cite any authority barring the Tax Board from “looking beyond the six-month window in order to determine the fact-driven question of residency” (2003 WL 23100266, *8, 2003 Cal App Unpub LEXIS 12227, *25-26). It further noted, for example, that there could be an admission made in 1993 relevant to residency in 1991 {id.).
*204 However, we respectfully find this reasoning to be unpersuasive. First, the California appellate court placed the burden on Hyatt to show that the Tax Board was barred from seeking materials outside the audit period, rather than on the Tax Board to show that such materials were reasonably related to the tax proceeding, as New York law requires (see Anheuser-Busch, Inc. v Abrams, 71 NY2d at 332). Second, the Tax Board has not provided any factual basis to support the theory that the materials sought for the years outside of the audit years contain admissions as to Hyatt’s residency in the audit years (see Virag v Hynes, 54 NY2d at 441-442). Theoretically, any communication made by Hyatt, to any person, at any time after the audit years, could contain such an admission. However, a demand seeking such a communication on that basis would be clearly overbroad.
IV Common-Interest Privilege
Finally, we analyze whether the Supreme Court properly denied that branch of Hyatt’s petition which sought, in the alternative, a protective order pursuant to CPLR 3103. Specifically, the issue is whether the documents sought by the subpoenas are protected by the common-interest privilege.
Contrary to Hyatt’s contention, the Supreme Court properly applied New York privilege law instead of Nevada privilege law. To determine which state’s privilege law should apply, New York courts apply an interest analysis. “[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict” (Miller v Miller, 22 NY2d 12, 15-16 [1968]; see Edwards v Erie Coach Lines Co., 17 NY3d 306, 320 [2011]; Schultz v Boy Scouts of Am., 65 NY2d 189, 197 [1985]; First Interstate Credit Alliance v Andersen & Co., 150 AD2d 291 [1989]).
Here, despite Hyatt’s alleged (and disputed) residency in Nevada during a portion of the relevant period, New York has the greatest interest in applying its privilege law to the subject subpoenas, which seek documents created in New York regarding a licensing program administered in New York by Philips, a New York corporation, and to depose New York-based attorneys (see Edwards v Erie Coach Lines Co., 17 NY3d at 320; Schultz v Boy Scouts of Am., 65 NY2d at 197; First Interstate Credit Alliance v Andersen & Co., 150 AD2d at 293-294).
Under New York law, confidential communications between a lawyer and his or her client in the course of professional employ *205 ment are privileged from disclosure (see CPLR 4503 [a]). To be privileged, the communication must be made for the purpose of seeking or providing legal advice and must have been primarily or predominantly of a legal character (see Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377-378 [1991]).
The common-interest privilege is an exception to the traditional rule that the presence of a third party waives the attorney-client privilege (see Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s, London, 176 Misc 2d 605, 611 [1998], affd 263 AD2d 367 [1999]; In re Quigley Co., Inc., 2009 WL 9034027, *2-3, 2009 Bankr LEXIS 1352, *7-8 [Bankr SD NY 2009]). To fall within that exception, the privileged communication must be for the purpose of furthering a legal interest common to the client and the third party (see United States v Schwimmer, 892 F2d 237, 243 [1989], cert denied 502 US 810 [1991]). The legal interest that those parties have in common must be identical (or nearly identical), as opposed to merely similar (see United States v Doe, 429 F3d 450, 453 [2005]; Federal Deposit Ins. Corp. v Ogden Corp., 202 F3d 454, 461 [2000]). This Court has held that application of the common-interest privilege further requires that the communication be made “in reasonable anticipation of litigation” (Hudson Val. Mar., Inc. v Town of Cortlandt, 30 AD3d 377, 378 [2006]; see also Matter of Stenovich v Wachtell, Lipton, Rosen & Katz, 195 Misc 2d 99, 108 [2003]; Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s, London, 176 Misc 2d at 611-612).
Hyatt requests that we depart from our precedent and extend the common-interest privilege to cover communications made with no expectation of litigation. More specifically, Hyatt requests that this Court expand the common-interest privilege to include non-litigation-related communications between a patent holder and counsel for an exclusive licensee. However, Hyatt’s request need not be reached, because the subpoenas, as properly modified by the Supreme Court, do not seek communications that would fall within the common-interest privilege, regardless of whether those communications were made in anticipation of litigation.
Since the common-interest privilege is an outgrowth of the attorney-client privilege, the communication must satisfy the requirements of the attorney-client privilege (see Fewer v GFI Group Inc., 78 AD3d 412 [2010]). Accordingly, the communication must have been “made for the purpose of facilitating the rendition of legal advice or services in the course of a profes *206 sional relationship and have been primarily or predominantly of a legal rather than a commercial nature” (U.S. Bank N.A. v APP Intl. Fin. Co., 33 AD3d 430, 431 [2006] [emphasis omitted]; see Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377-378; Delta Fin. Corp. v Morrison, 69 AD3d 669 [2010]).
Here, the subpoenas, as properly modified by the Supreme Court, demand material relating to the 1991 and 1992 tax years with respect to the issues of Hyatt’s residency and income received in those years, his relationship to Philips, and the licensing of his patents and any revenue generated therefrom in 1991 and 1992. Significantly, the Supreme Court modified the subpoenas by striking the portions thereof which sought documents relating to the patent interference proceeding, which may have involved communications of a legal nature between Hyatt and Philips’s in-house counsel.
Communications regarding Hyatt’s licensing business with Philips are not legal in nature, but commercial, regardless of the status of Haken and Tamoshunas as attorneys (see Baxter Travenol Labs., Inc. v Abbott Labs., 1987 WL 12919, *2, 1987 US Dist LEXIS 10300, *6 [ND 111 1987]; SCM Corp. v Xerox Corp., 70 FRD 508, 523 [1976]). Such commercial communications are not protected by the attorney-client privilege (see Delta Fin. Corp. v Morrison, 69 AD3d at 670; U.S. Bank N.A. v APP Intl. Fin. Co., 33 AD3d at 431).
Furthermore, communications regarding the negotiation of Hyatt’s licensing agreement with Philips would not be protected by the common-interest privilege because Hyatt and Philips had divergent interests in making the deal (see Baxter Travenol Labs., Inc. v Abbott Labs., 1987 WL 12919, *2, 1987 US Dist LEXIS 10300, *6). Accordingly, the materials sought in the modified subpoenas are not subject to the common-interest privilege.
Under these circumstances, the Supreme Court properly denied that branch of Hyatt’s petition which sought, in the alternative, a protective order pursuant to CPLR 3103.
Accordingly, the order is affirmed.
Eng, EJ., Balkin and Sgroi, JJ., concur.
Ordered that the order is affirmed, with costs.